JAMES E. WHITNEY & another *vs.* BENJAMIN G. BOARDMAN & others.

Suffolk.    March 9. — Sept. 4, 1875.    AMES & ENDICOTT, JJ., absent.

If goods are sold with "all faults," parol evidence is admissible to show that these words have a well established meaning in the trade in such goods, and what that meaning is.

A sale of goods with "all faults" covers, in the absence of fraud on the part of the vendor, all such faults and defects as are not inconsistent with the identity of the goods as the goods described.

In an action by a seller of goods against the purchaser for refusing to accept them, it appeared that, after such refusal, the seller notified the purchaser that the goods would be sold by auction on a certain day, and they were so sold for a price less than the contract price. The judge, before whom the case was tried in the court

below, ruled that the measure of damages was the contract price less the net proceeds of the sale. *Held,* in the absence of evidence that such goods were not usually sold by auction, that the purchaser had no ground of exception.

CONTRACT on an account annexed to recover the difference between the contract price of a lot of Cawnpore buffalo hides and the net proceeds of a sale of them by public auction. Trial in the Superior Court, before *Bacon,* J., who allowed a bill of exceptions in substance as follows :

The plaintiffs put in evidence tending to show the following facts : On February 1, 1873, they sold the hides in question to the defendants through Southwick & Sands, merchandise brokers, and the following memorandum signed by the brokers, and accepted in writing by the defendants on February 4, 1873, was made : " Sold, for account of Messrs. Whitney, Cushing & Co., to Messrs. B. G. Boardman & Co., 37 bales Cawnpore buffalo hides, expected to arrive at Boston per Peruvian Congress from Calcutta. Price, 15 cents gold per pound. Cash in thirty days from delivery. Hides to be taken ' all faults ' except for sea damage only, if any, for which a fair allowance is to be made. Hides to be taken from the wharf as landed. Tare, seven pounds per bale. No arrival, no sale."

The hides in question arrived in Boston on board the Peruvian Congress, on March 23, 1873, and were duly landed on the wharf, and the plaintiffs gave the defendants due notice thereof, and offered to deliver the hides to them ; and, after examination of the hides, the defendants refused to accept them. The bill for the hides was due on May 5, 1873, and the plaintiffs on the same day presented it for payment, and again offered to deliver the hides, but the defendants refused either to receive the hides or pay the bill. The plaintiffs then caused the hides to be sold by public auction on account of the defendants, giving them due notice of the time and place of sale ; the proceeds of the sale were much less than the contract price.

The plaintiffs offered evidence tending to show that the words "all faults," in the memorandum of sale, were in common use and had a well established meaning in the trade, in contracts like the present one. The defendants objected to the admission of this evidence · but the judge admitted it, and the defendants excepted.

The defendants justified their refusal to take the hides, on the ground that they were not such as were known in this market as Cawnpore buffalo hides. Upon this point, evidence was introduced on both sides. The defendants also put in evidence tending to show that if the hides had been properly cured and packed and shipped in good order and condition, they should have arrived in like condition, sea damage excepted, and that these hides when they arrived were not in good order and condition, independently of sea damage. The plaintiffs introduced evidence tending to show that the hides were properly cured and packed and shipped in good order and condition, and that they arrived in good order and condition.

The defendants asked the judge to instruct the jury that the rule of damages was the difference between what the hides actually brought in the market, that is, the sale price, and the contract price ; but the judge refused so to rule, and instructed the jury to deduct only the net proceeds of the sale by auction, first deducting from the contract price whatever amount of sea damage, if any, the jury should find.

The defendants also asked the judge to give the following instructions to the jury :

" 1. Under the written contract between the parties to this suit, there being no opportunity to examine the hides at the time the contract was made, the defendants were entitled to receive thirty-seven bales of the kind and quality usually sold in the market and known by dealers in hides as Cawnpore hides, cured as such hides are usually cured, packed as they are usually packed, and of merchantable quality.

" 2. The term ' all faults,' used in the contract, means that the defendants were to take the risk of such usual and ordinary defects as might naturally occur if the hides when shipped were properly cured and packed and were of merchantable quality.

" 3. The plaintiffs, therefore, to entitle them to recover under this contract, must satisfy the jury that the hides were, when shipped, such hides as are usually known and sold as Cawnpore hides, properly cured as such hides should be cured, properly packed and of merchantable quality."

The judge refused so to instruct the jury, and gave instructions which, so far as they related to said requests, were as follows :

" The plaintiffs must prove that the hides were Cawnpore buffalo hides, known as such in the market of Boston, and that the hides must have been such. The burden of proof is on the plaintiffs to show they are such.

" The plaintiffs must also prove that these hides, they having been sold to arrive, were of the same kind when shipped from Calcutta. They must be Cawnpore buffalo hides at the point of shipment, and known as such. In other words, the plaintiffs cannot ask the defendants to fulfil a contract which they have not fulfilled.

" Nor can any defects in the hides, which may properly be included under the term ' all faults,' be a ground for the rejection of the hides by the defendants. If they were Cawnpore buffalo hides, the defendants bought those hides subject to ' all faults,' and, therefore, the fact that defects, such as might properly be described by those words, were found in the hides, would not furnish any grounds for the defendants to reject the hides. The defendants were bound to take the hides subject to ' sea damage ' in the first place, being subject therefor to allowance in the contract price, and subject also to ' all faults ' without any allowance therefor, for such was the defendants' contract. They made a contract to take these hides subject to ' all faults.' As to the meaning of this term ' all faults,' the evidence of witnesses has been introduced and admitted for the purpose of showing what those words mean by the general usage of trade in Boston ; and the jury is to give to those words the meaning which the words may have been proved to have by a general or universal custom or usage of trade in this market. In other words, by a general and universal custom, particular words may assume and have a particular and definite signification different from the ordinary meaning of those words ; and wherever those words have, by a general and universal custom of trade, such a signification definite and fixed, that becomes the meaning of the parties acting in the trade. It is for you, in the first place, to say whether any specific meaning, by a general and universal custom of the trade in Boston, has been attached to these words ; and if so, then these parties must be presumed by the jury to have used these words with reference to that meaning. And you will determine and limit the meaning of the words ' all faults ' by any such established and

well known and universal usage of the words in the trade. You have the evidence before you on that matter, and I shall leave it in the first place for you to say whether there was a meaning in the trade attached to those words different from the ordinary meaning of the words. But if those words do not have a fixed and definite meaning by the general and well known custom of the trade, then they must have the ordinary and natural meaning attached to such words in such a connection, or in regard to the subject matter of the contract.

" Unless, therefore, the words have a meaning determined by the general usage of the trade, they must mean all defects arising in any way, either from defects in the cure or in the packing or in the shipping or transporting of the hides, not however included under the term 'sea damage.' But the hides, subject to such defects, must be known where they are shipped, and also in the Boston market, as the article named in the contract, namely, ' Cawnpore buffalo hides ; ' and if the defendants got the article contracted for, then they are bound to take the article with ' all faults,' or with all such defects as I have named, unless it appears that the plaintiffs used some fraud or deception in order to conceal such faults. Then if you find that the defendants, without justifiable cause, rejected these hides under the contract as it stands in writing, having regard to the words, ' all faults,' to be explained by you by the custom, if such a custom has been proven to you, to be explained by the ordinary and natural meaning of the words ; if no such custom is proven ; if the defendants, without justifiable cause, rejected these hides ; if the plaintiffs kept their part of the contract, and furnished the defendants with Cawnpore buffalo hides, although with ' all faults,' and although with sea damage, and the defendants have refused to receive them, then the defendants have broken the contract, and are liable to the plaintiffs for the amount of the damage." These instructions were not excepted to.

The jury returned a verdict for the plaintiffs ; and the defendants alleged exceptions.

*E. Avery & E. M. Johnson,* for the defendants.

*N. Morse & H. H. Currier,* for the plaintiffs.

DEVENS, J. The expression in the contract, by which the defendants agreed to purchase the Cawnpore buffalo hides with

" all faults," was one of such a character, that, if in common use and having a well established meaning in the trade in such articles, such meaning might properly be shown. It is not necessary that terms should be technical, scientific or ambiguous in themselves in order to entitle a party to show by parol evidence the meaning attached to them by the parties to the contract. *Whitmarsh* v. *Conway Ins. Co.* 16 Gray, 359. *Miller* v. *Stevens*, 100 Mass. 518. *Swett* v. *Shumway*, 102 Mass. 365. Nor does it appear by the exceptions that any evidence was admitted that gave to these words any meaning different from that which the presiding judge attributed to them in the instruction given by him, based upon the hypothesis that the jury might find that there was no meaning determined by the general usage of trade. This instruction substantially was that while the plaintiffs must prove that the hides were " Cawnpore buffalo hides," known and sold as such, yet if the defendants got the articles contracted for, having agreed to take them "with all faults," they were bound to take them with " all defects arising in any way either from defects in the cure, or in the packing, or in the shipping or transporting of the hides, not however included in the term sea damage." For the contingency of damage by sea an allowance was to be made according to the contract, in the price. The defendants argue that this instruction was defective, and that it was not only necessary for the plaintiffs to show that these were Cawnpore hides, but also that they were " properly cured as such hides should be cured, properly packed and of merchantable quality."

But the phrase " with all faults," cannot be limited, as the defendants contend, " to all such faults or defects as the thing described ordinarily has." That would be to deprive it of force entirely. Its meaning is such faults or defects as the article sold might have, retaining still its character and identity as the article described. The authorities cited by the defendants sustain this view, and not the one contended for by them. Thus in *Shepherd* v. *Kain*, 5 B. & Ald. 240, cited in *Henshaw* v. *Robins*, 9 Met. 83, it was held that in the sale of a copper-fastened vessel ' with all faults," the term meant such faults as a copper-fastened vessel might have, but that it would not cover the sale of a vessel not copper fastened. The only other authority cited by the defendants on this point is *Schneider* v. *Heath*, 3 Camp. 506, which

decides no more than that "to be taken with all faults" cannot avail a vendor who knew of secret defects and used means to prevent the buyer from discovering them. A similar limitation was given by the presiding judge in the present case. Nor, if the phrase "with all faults" had not been in the contract, is it easy to see how the defendants could have demanded anything more than that the article bought by them should answer the description of "Cawnpore buffalo hides." *Gossler* v. *Eagle Sugar Refinery*, 103 Mass. 331. *Boardman* v. *Spooner*, 13 Allen, 353, 359.

The defendants further contend that the rule of damages given by the court, which was the contract price, deducting therefrom the net proceeds of the auction sale of the hides made by the plaintiffs, was erroneous. But by no other rule would the plaintiffs have been indemnified for their loss by the non-compliance of the defendants with their contract. They were not obliged to keep the goods, and if they sold them, the expenses of such sale constitute a charge upon them caused by this non-compliance, whether it was a private sale or one by auction. Of the intention of the plaintiffs to sell at auction the defendants were notified; it does not appear to have been an unusual mode of disposing of such goods; and having violated their contract, the defendants cannot complain of the expenses which have thus been occasioned.                    *Exceptions overruled.*