AMERICAN HISTORICAL SOCIETY, INCORPORATED, *vs.* ELIZABETH
H. STORER.

ELIZABETH H. STORER *vs.* AMERICAN HISTORICAL SOCIETY,
INCORPORATED.

Middlesex.    January 22, 1919. — March 1, 1919.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & CARROLL, JJ.

*Contract*, In writing, Performance and breach.    *Evidence*, Extrinsic affecting writ-
ings, Relevancy.

A woman signed an order in writing for the making of a steel plate portrait of her
father to be inserted in a "Memorial Encyclopedia of the State of Massachu-
setts" for which she agreed to pay $300 "upon submission of Artist's proof,"
and the agreement provided, "It is further understood by me that no agreement
will be recognized by the company unless embodied in this contract, and that
this contract is not subject to countermand."    The same woman also signed
another order subscribing for a copy of the volume named above, for which she
agreed to pay $38 on its delivery at her residence, which order provided, "The
work is to be issued in special De Luxe binding lettered in gold.    No repre-
sentations or guaranties have been made which are not herein expressed.    I base
this order on what is promised in this contract, and it is also understood by me
that this contract is not subject to countermand.    I also agree to correct the per-
sonal sketch when presented to me for that purpose."    In an action of contract
on the contracts made by these two orders, the trial judge, on evidence warrant-
ing such findings, found that the binding of the volume delivered to the defend-
ant was of the quality understood by the parties, and that the work was an
encyclopedia in such sense as the subscriber well understood and knew, that
the article on the defendant's father was sent to the defendant with a full oppor-
tunity to read and correct it, and that the defendant "signed her approval of it
without reading" the article, "that the plates were executed, proof submitted
and approved by the [subscriber], inserted in the book and the plates and prints
delivered to" her, and that throughout all the transactions no fraudulent mis-
representations were made by the plaintiff.    The judge found for the plaintiff.
*Held*, that the finding of the judge was warranted; that, the defendant having
agreed in writing in unambiguous terms to pay for the plates for her father's
portrait and to take the book, the contracts could not be enlarged by extrinsic
evidence, and that by the express warranty contained in the contract any implied
warranty inconsistent with it necessarily was excluded.

In the case above described it also was *held*, that evidence offered by the defendant
of a genealogy of the family of the defendant's father prepared for the use of
another publisher, which differed from the sketch contained in the book in ques-
tion, properly was excluded by the trial judge as wholly irrelevant.

Two ACTIONS, OF CONTRACT and CONTRACT AND TORT, the first action by the American Historical Society, Incorporated, against Elizabeth H. Storer, upon a contract in writing by which the plaintiff was to execute for the defendant a steel plate portrait, dark background, of Robert Boyd Storer and print and insert it in a work called the "Memorial Encyclopedia of the State of Massachusetts," for which the defendant promised to pay the plaintiff or order the sum of $300, payment to be made upon submission of artist's proof, the declaration alleging that the plaintiff had performed fully its part of the contract and that the defendant owed it the sum of $300, with a second count alleging a promise of the defendant to pay the plaintiff $38 for the volume entitled "Memorial Encyclopedia of the State of Massachusetts," that the volume was delivered and that the defendant failed to pay for it; and the second action, of contract or tort, by the defendant in the first action against the plaintiff in that action seeking to recover back the amount of $400 paid by her upon a contract in writing for the execution of the plates for printing in colors the Storer coat of arms to be inserted in the "Memorial Encyclopedia of the State of Massachusetts," alleging failure of consideration and fraudulent misrepresentations of the agents of the plaintiff in the first case. Writs dated respectively July 20, 1917, and October 18, 1917.

The two contracts signed by the defendant in the first case, copies of which were annexed to the declaration in that case, were as follows:

"Exhibit A.

| Memorial Encyclopedia | The American |
|---|---|
| of the | Historical Society, Inc. |
| State of Massachusetts | New York |

William Richard Cutter, A. M., Editor.

$300.00                                             March 21, 1917.

Please execute for me a Steel Plate Portrait (dark back ground), of Robert Boyd Storer to be inserted in the Memorial Encyclopedia of the State of Massachusetts, for which I hereby agree to pay to you or your order the sum of Three Hundred Dollars, payment to be made, upon submission of Artist's proof. After publication said Steel Plate and ten extra proofs are to be delivered

at my residence or place of business. This contract does not include the books previously subscribed for. It is further understood by me that no agreement will be recognized by the Company unless embodied in this contract, and that this contract is not subject to countermand. I also agree to furnish a photograph or picture, within ten days, from which said portrait is to be made, or forfeit one-half the above amount as liquidated damages.

Miss Elizabeth Hoar Storer,<br>Post Office, 63 Garden St., Cambridge, Mass."

"Exhibit B."

Memorial Encyclopedia of the State of Massachusetts<br>Edition de Luxe<br>William Richard Cutter, A. M., Editor

The American Historical Society, (Inc.)
New York

Please enter my name as a subscriber to your forthcoming work entitled, 'Memorial Encyclopedia of the State of Massachusetts,' for which I agree to pay to you or your order $38.00 (Thirty-Eight Dollars), for one volume, payment to be made when said work is delivered to me at my residence. The work is to be issued in special De Luxe binding lettered in gold. No representations or guaranties have been made which are not herein expressed. I base this order on what is promised in this contract, and it is also understood by me that this contract is not subject to countermand. I also agree to correct the personal sketch when presented to me for that purpose.

Elizabeth Hoar Storer

Date Jan'y 10/1917    Post Office, Cambridge 63 Garden St."

On Stub:    "Given by Elizabeth Hoar Storer
Taken by Frank J. Horn
Order No. 34"

In the Superior Court the cases were heard without a jury by *Morton,* J., who in the first case made the following findings and rulings:

"The plaintiff sues upon two written contracts, copies of which are annexed to the declaration.

"The answer sets up various fraudulent misrepresentations, and that the book was not in conformity with the contract.

"I find that there were no fraudulent misrepresentations, and that those claimed to have been fraudulent were not relied upon as an inducement to sign the contract in suit.

"The book contract provided for a 'special De Luxe binding lettered in gold' and that 'no representations or guaranties have been made which are not herein expressed' and that the defendant would correct the personal sketch of her father.

"She was shown a copy of a 'Baltimore Biography' as a sample of the 'De Luxe binding' and approved of it.

"The binding in question was as excellent as the binding of the 'Baltimore Biography' and was therefore of the quality 'De Luxe' as understood and agreed upon by the parties. It was an encyclopedia as the term is to be construed with reference to the defendant's knowledge of what the book was to contain. She knew that it was to contain only relatively few of the lives of those whom the publishers deemed to be representative men and accepted their standards without inquiries or objection.

"The article as to her father was read to her, and she was given full opportunity to read it over and correct it. She signed her approval of it without reading it herself.

"The article, as well as other articles, contained careless errors in genealogy, typography and spelling, which made the book, so far as its contents were concerned, open to fair criticism.

"But under the terms of the written contract there could be no implied warranty of the fitness of the book in these respects.

"There was also some question whether Mr. Cutter actually performed the duties of personal oversight of an editor, although I find that he was the nominal editor.

"But I rule that under the written contract there was no implied guarantee that he should give such personal oversight, and find that there was no representation made to that effect as an inducement to sign the contract.

"I find that no fraudulent misrepresentations were made to induce the defendant to sign the contract for the 'Steel Plate Portrait'; that the portrait was in accordance with the agreement; that the agreement was performed in all respects by the plaintiff.

"I find for the plaintiff and assess damages in the sum of $353.21, including interest from the date of the writ."

In the second case the judge made the following findings and rulings:

"The plaintiff signed a written contract to pay the defendant $400 for the execution of the necessary plates for printing in colors a 'Storer' coat of arms to be inserted in the 'Memorial Encyclopedia of the State of Massachusetts,' the amount to be paid upon the submission of artist's proof; the plates and ten prints to be delivered to her after publication of the book. The plates were executed, proof submitted and approved by the plaintiff, inserted in the book and the plates and prints delivered to the plaintiff. She paid the amount of the contract by check; unsuccessfully attempted to stop payment thereof, and brought this suit to recover the amount, on the ground that she was induced to enter into the contract by various false representations.

"I find that no false representations were made; that the defendant performed all the terms of the contract; that the book conformed to all the guarantees legally binding upon the defendant, for the reasons given in the cross action.

"I find for the defendant."

The request for rulings made by Elizabeth H. Storer, the subscriber, and refused by the judge, which are referred to in the opinion, were as follows:

"1. That the book was not supplied in conformity with the contract, it being

(a) not special de luxe binding;

(b) not reasonably fit for the purpose for which it was intended;

(c) not an encyclopedia;

(d) not edited by Cutter.

"2. That the plate was ordered for insertion in the book, the characteristics of which do not in fact comply with the understanding.

"3. The defendant is entitled to a verdict in the action on the order for the plate.

"4. The contract for the book was obtained by fraudulent misrepresentation (a) of its character (b) of the editorial supervision (c) of the standing of the company in relation to the Massachusetts Historical Society.

"5. Judgment should be (a) for the defendant on each count of the first case and (b) for the plaintiff in the second case."

The subscriber offered in evidence the Storer genealogy prepared under Cutter's editorial supervision for the Lewis Company in 1910, for the purpose of showing statements therein upon genealogical points conflicting with those in the sketch here in question. The court excluded the evidence and the subscriber excepted.

In accordance with the above stated findings and rulings and refusals to rule the judge made general findings, in the first case for the plaintiff in the sum of $353.21 and in the second case for the defendant. In each case the subscriber alleged exceptions.

*R. S. Warner,* for Elizabeth H. Storer.

*F. L. Norton,* for the American Historical Society, Incorporated.

BRALEY, J. The plaintiff, to which reference will be made as the society, sues in the first action for the price of a book entitled "Memorial Encyclopedia of the State of Massachusetts," while the plaintiff in the second action, hereafter called the subscriber, seeks to recover back the amount paid to the society for the insertion in the book in connection with his biography, of a portrait and coat of arms of her father. The subscriber rests her right to reclamation, as well as her denial of liability, on the common ground shown by her requests for rulings and findings, which comprise all the material averments of the answer and allegations of the declaration.

The trial judge was requested to rule and find, that the book delivered, but which she declined to accept, was not in conformity with the contract because it was not in *de luxe* binding, or reasonably fit for the purpose for which it was intended, or an encyclopedia, or edited by Cutter, and that the contract for the book was obtained by fraudulent misrepresentations of its character, of the editorial supervision, and of the society in relation to the Massachusetts Historical Society. The contract expressly provides, that "No representations or guaranties have been made which are not herein expressed. I base this order on what is promised in this contract, and it is also understood by me that this contract is not subject to countermand. I also agree to correct the personal sketch when presented to me for that purpose." The trial judge, having found, on evidence warranting the findings, that the binding was of the quality understood by the parties and that the work was an encyclopedia in such sense as the sub-

scriber well understood and knew, "that it was to contain only relatively few of the lives of those whom the publishers deemed to be representative men and accepted their standards without inquiries or objection," and that, after the "article as to her father was read to her" and a full opportunity given to read it over and correct it, she "signed her approval of it without reading," and that "the plates were executed, proof submitted and approved by the [subscriber], inserted in the book and the plates and prints delivered to" her for which she gave her check and that throughout all the transactions no fraudulent misrepresentations were made by the society, the subscriber's second, third and fourth requests, and subsections "a" and "b" of the first request were denied rightly.

It is argued in support of subsections "b" and "d" that the work contained biographical sketches of persons who, although they may have been men of integrity, of good character, of average mental ability and successful in their various callings, which were reputable, yet they were not sufficiently illustrious either in birth or in academic or political honors to merit their inclusion by the society. But, whatever the standard which in the opinion of the subscriber should have been adopted in the selection and classification of those deemed worthy of remembrance by their fellow men, the contract under which the rights of the parties are to be determined not having contained any limitations or provisions of this character, or that Cutter personally should oversee its composition and preparation, no implied warranty of fitness of the book either in the choice of persons to be commemorated, or of editorial supervision, or of typographical perfection, or of literary finish and excellence is to be read in by implication. A buyer can contract for books with the understanding that in many particulars they may prove to be imperfect, just as the parties may contract for the sale of unmerchantable goods. *Whitney* v. *Boardman,* 118 Mass. 242. *Morley* v. *Consolidated Manuf. Co.* 196 Mass. 257. It all depends upon the terms of the agreement. *Inter-State Grocer Co.* v. *George William Bentley Co.* 214 Mass. 227, 231. The subscriber engaged to take the book and rested her order on the terms of an unambiguous contract which cannot be enlarged by parol evidence. And the only material representation or affirmation is that the work is to be entitled "Memorial Encyclopedia

of the State of Massachusetts," which is "to be issued in special De Luxe binding lettered in gold." The contract accordingly is to be construed as meaning that, if the book corresponded with the conditions therein named, the subscriber upon delivery must pay the price. *Curwen* v. *Quill,* 165 Mass. 373.

More briefly stated the present case comes within the general rule, that where there is an express warranty in a written contract of sale, an implied warranty inconsistent with it is necessarily excluded. *Whitney* v. *Boardman,* 118 Mass. 242. *Peoria Grape Sugar Co.* v. *Turney,* 175 Ill. 631. *Detroit Trust Co.* v. *Engel,* 192 Mich. 62. *York* v. *Steward,* 21 Mont. 515, 518. *Carleton* v. *Lombard, Ayres & Co.* 149 N. Y. 601. *Milwaukee Boiler Co.* v. *Duncan,* 87 Wis. 120, 125. *J. I. Case Plow Works* v. *Niles & Scott Co.* 90 Wis. 590. *De Witt* v. *Berry,* 134 U. S. 306.

The judge also properly excluded evidence of the Storer genealogy which had been prepared by Cutter for use by another company and contained statements that differed from the sketch appearing in the book in question. It was wholly irrelevant to any undertaking of the society.

The society being entitled to recover, the subscriber cannot prevail, and, perceiving no error of law in any of the rulings, her exceptions in each case should be overruled.

*So ordered.*