## LONDON GUARANTEE AND ACCIDENT COMPANY, LIMITED, *vs.* GABRIEL JACOBSON.

Suffolk.   March 7, 1922. — April 15, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Insurance*, Credit.   *Contract*, Construction, In writing.   *Evidence*, Extrinsic affecting writing.   *Words*, "Gross."

A jobber of cotton piece goods applied to an insurance company for a policy of credit insurance and a policy was issued to him for a certain minimum premium for the period of one year limiting recovery for losses to $2,500 and $1,000 respectively on shipments made to customers having a first and second credit rating as provided in the latest published book of Bradstreet's mercantile agency.   The minimum premium was based upon the gross sales and shipments made by the jobber and the policy also provided that an additional premium should be paid at the end of the year "on the gross shipments and deliveries of merchandise, made during the policy period, which may be in excess of $200,000."   The sales by the insured during the policy period to customers having a first and second credit rating was less than $200,000, but sales to all his customers exceeded that amount.   In an action by the insurance company against the jobber for an additional premium the defendant contended that the words "gross shipments and deliveries" meant only shipments and deliveries made to customers having a first and second credit rating.   *Held,* that

(1) The word "gross" in describing shipments and deliveries was used in its common and ordinary sense as meaning whole, entire, total;

(2) The words "gross shipments and deliveries . . . in excess of $200,000" could not be limited in the manner claimed by the defendant;

(3) The defendant agreed to pay the premium called for on all gross shipments and deliveries regardless of the credit ratings of his customers.

The policy above described expressly provided that the application and policy constituted the entire contract between the parties notwithstanding any statement or agreement to the contrary or any addition made by any solicitor or agent, and no change or waiver of the conditions or provisions of the policy could be valid unless indorsed thereon and signed by the plaintiff's general manager.   Evidence of certain statements, made by an agent of the company to the applicant previous to the issuance of the policy, in explanation of certain terms therein was introduced by the plaintiff without objection.   *Held,* that the defendant was bound by the contract as written, and the statements of the agent, although admitted in evidence without objection, could not alter or vary it.

CONTRACT, for the balance of a premium alleged to be due upon a policy-of credit insurance. Writ in the Municipal Court of the City of Boston dated August 3, 1918.

The action was removed to the Superior Court and was tried before *Keating*, J. Material evidence and exceptions taken by the defendant are described in the opinion. At the close of the evidence, upon motion by the plaintiff, the judge ordered a verdict in its favor in the sum of $992 and reported the action to this court for determination upon the terms agreed to by the parties, that, if the judge was right in ordering a verdict for the plaintiff, judgment was to be entered for the plaintiff on the verdict; but if he erred in ordering a verdict for the plaintiff, judgment was to be entered for the defendant.

*C. H. Dow*, for the defendant.

*Lee M. Friedman*, for the plaintiff.

CARROLL, J. The principal question involved in this case is the construction of the clause in a policy of credit insurance, providing, after the minimum premium has been paid, for an additional payment on the gross shipments and deliveries of merchandise made during the policy period in excess of $200,000. This action is brought to recover the additional payment.

The defendant, a jobber in cotton piece goods, made application to the plaintiff for a policy of insurance against loss arising from accounts owing him by debtors through *bona fide* sales of merchandise, and a policy issued insuring him from May 21, 1917, to May 20, 1918, inclusive, on all such accounts "in excess of an agreed initial or own loss, of $943.76 to be first borne by the Insured." The policy also provided that no account was covered unless the debtor had at the date of shipment and delivery a capital and credit rating as provided in the latest published book of Bradstreet's mercantile agency, a first credit being known as the best credit and a second credit being considered good; the loss being limited to $2,500 on the first credit rating and $2,000 on the second. The defendant's total shipments during the policy period amounted to $326,296.79, and the gross shipments to customers of first and second rating were less than $200,000. The defendant paid the minimum premium. The plaintiff contends that, the gross sales being $326,296.79, less cancellations of $8,212.22, it is entitled to the additional premium of twenty-

seven fortieths of one per cent on the shipments of $126,201.44, this being the excessive shipments over $200,000. The defendant contends that he is required to pay the additional premium only in the event that the aggregate amount of sales to purchasers of the first and second credit rating exceed $200,000, and that sales to other purchasers should not be included in computing gross shipments and deliveries.

At the close of the evidence the plaintiff requested the trial judge to rule that the words "'gross shipments and deliveries of merchandise made during the policy period' meant gross shipments and deliveries of merchandise made by the defendant to all his customers during the policy period whether they were in the first, second or third credit rating, or whether they were unrated and regardless of amount of any particular shipment or delivery." The judge granted this request and the defendant excepted. The defendant requested the judge to rule that the words "'gross shipments and deliveries of merchandise made during the policy period,' expressed in the policy under Condition 1, meant only those shipments and deliveries of merchandise made by the defendant to his customers who were in the first and second credit rating, each customer in the first credit rating being covered to the extent of $2,500, and each customer in the second rating being covered to the extent of $2,000." The judge declined to give this ruling and the defendant excepted. On the plaintiff's motion a verdict was ordered in its favor in the sum of $992, consisting of $852 principal and $140 interest; and the defendant excepted. The case was reported to this court with the stipulation that, if the judge was right in ordering a verdict for the plaintiff, judgment was to be entered on the verdict; but, if the judge erred, judgment was to be entered for the defendant.

The word "gross," in describing shipments and deliveries, was used in its common and ordinary sense as meaning whole, entire, total. The words "gross shipments and deliveries . . . in excess of $200,000.00" cannot be limited in the manner claimed by the defendant without giving to the language of the policy a construction contrary to its plain meaning. The defendant admitted that his statements in the application disclosing his total sales included the sales to all his customers regardless of credit rating.

And, as the basis of the policy, he stated in his application the amount of the gross shipments and deliveries from February 1, 1917, to the date of the application. He further admitted that the term "gross shipments and deliveries" was used in the application to include his entire shipments and deliveries without reference to the credit rating of his customers or the amount of any particular shipment or delivery made during the period. Although the policy covered only losses on accounts of customers who had the required credit rating, the minimum payment was based on gross sales irrespective of credit rating. The additional premium was also based on the total shipments and deliveries without reference to credit rating, and the same words had the same meaning when used in calculating the minimum premium and the additional premium in case the gross shipments and deliveries exceeded $200,000. See in this connection *Upham* v. *Parker*, 220 Mass. 454, 458; *Russell* v. *Lilly*, 213 Mass. 529, 530.

The defendant contends that extrinsic evidence was admissible to explain the policy. Evidence was admitted that the defendant asked the plaintiff's agent what would happen if the defendant sent "a bill of goods to one of his customers . . . in excess of $2,500," to which question the agent replied: "this would be 'at your own risk, we will not pay you anything for it in case the party fails to pay you.'" And the agent when asked "Would I have to pay the excess premium on that?" said: "Inasmuch as we are not liable for your losses in excess of $2,500, you would not be obliged to pay us an excess premium on that." As the written agreement was the entire agreement of the parties this evidence was inadmissible to vary or contradict it, *American Historical Society, Inc.* v. *Storer*, 232 Mass. 372; *Glackin* v. *Bennett*, 226 Mass. 316, and although it was received without exception, in our opinion the defendant is bound by the contract as written, and the statements of the agent could not alter or vary it. *Mears* v. *Smith*, 199 Mass. 319.

By the express terms of the policy, the application and policy constituted the entire contract between the parties, notwithstanding any statement or agreement to the contrary, or any addition made by any solicitor or agent, and no change or waiver of the conditions or provisions of the policy could be valid unless indorsed thereon and signed by the plaintiff's general manager.

This written agreement bound the parties and the statements of the solicitor did not change or vary it. The rights of the parties were to be determined by this written contract and the agent of the plaintiff could not promise or agree to the contrary. *Eastern Advertising Co.* v. *E. L. Patch Co.* 235 Mass. 580. *American Historical Society, Inc.* v. *Storer, supra. Colonial Development Corp.* v. *Bragdon,* 219 Mass. 170.

The defendant agreed to pay the premium called for on all gross shipments and deliveries regardless of the credit ratings of his customers. The amount due depended upon the legal meaning of the contract. A verdict was properly ordered for the plaintiff; and according to the report judgment is to be entered for the plaintiff on the verdict.

*So ordered.*