ETTA REINHERZ *vs.* THE AMERICAN PIANO COMPANY.

Suffolk.    November 17, 1925. — January 11, 1926.

Present: RUGG, C.J., CROSBY, PIERCE, & SANDERSON, JJ.

*Deceit. False Representations. Contract,* In writing, Construction. *Evidence,* Competency. *Practice, Civil,* Auditor. *Good Will. Damages,* In tort. *Sale,* Warranty.

It is within the discretion of the judge presiding at a trial at the close of the evidence to permit the declaration to be amended to conform to the evidence upon which the plaintiff relies.

At the trial of an action, the declaration in which in a first count was for breach of a contract whereby the defendant, a corporation dealing in talking machines and records, among other things assigned to the plaintiff "all its rights and interests under its contract with the Edison and Victor Talking Machine Companies, inasmuch as its rights under this contract are transferable or assignable," it was agreed that the defendant, before the contract with the plaintiff, under contract with the Victor Talking Machine Company was entitled to receive a certain number of the records called the "Red Seal requisition"; that in lieu thereof it had agreed to take a certain amount of cash. There was evidence that the quoted phrase in the contract of sale referred to this right of the defendant to receive records. No such records nor cash were delivered to the plaintiff. The judge refused to order a verdict for the defendant, and submitted to the jury the question, whether the phrase "rights and interests under its contract with the Edison and Victor Talking Machine Companies," as used in the agreement above described, included the privilege of receiving records under the so called Red Seal requisition, which the jury answered in the affirmative. The judge then ordered a verdict for the plaintiff for the amount of cash agreed upon between the Victor Talking Machine Company and the defendant in lieu of records, with interest. *Held,* that

(1) It was proper to submit to the jury the determination as a fact of the measure of the right, if any, of the defendant to receive and assign Red Seal requisition records to the plaintiff, and of the question, whether it was intended by the defendant, as rightly understood by the plaintiff, that the defendant should transfer its rights to receive the Red Seal records to the plaintiff;

(2) There was no error in refusing to order a verdict for the defendant or in submitting the special question to the jury, or in the ordering of a verdict for the plaintiff.

A second count in the action above described was in tort for deceit. Evidence at the trial tended to show misrepresentations and deception, knowingly practised by an agent of the defendant with relation to the

value, character and condition of the goods being sold, resulting, when the plaintiff without knowledge relied thereon, in damage to her; and it was *held*, that such evidence warranted a submission of this question to the jury.

The provision of § 14 of G. L. c. 106, "No affirmation of the value of goods . . . shall be construed as a warranty," must be limited to actions sounding in contract and should not, by construction, be extended to limit or impair rights, as they existed before the passage of the statute, to recover in an action of tort damages suffered by reason of reckless or fraudulent misstatements of fact relating to value.

One item of the sale above described was "The Cowan Machine stock 'as is.'" The plaintiff offered and the judge admitted evidence to show that the defendant's agent had represented that the Cowan machines were better than the Victor machines, and under appropriate instructions the judge submitted questions to the jury to determine whether the defendant was "liable to the plaintiff for false and fraudulent representations that the Cowan machines were better than the Victor machines," and if so what the difference in value between the Cowan and Victor machines was. The defendant excepted to this action of the judge for the reason that the words "as is" were in the contract and that the representation was merely in the nature of "puff." *Held*, that

(1) The meaning of the phrase "as is" might vary with the conditions and circumstances of its use, and, these not being determined, it was proper to submit the question to the jury;

(2) It was proper to submit to the jury the question, whether the representations made were of opinion or of fact.

On the evidence at the trial of the action above described, it being impossible to determine the meaning of the words "as is" from the form of the contract of sale, their use did not as a matter of law make it improper to submit to the jury with suitable instructions a special question to determine whether the defendant was liable for false and fraudulent representations as to the Cowan machines.

It was proper, at the trial above described, to order a finding for the defendant on an item in which the plaintiff claimed damages due to the falsity of representations by the defendant that the value of good will contracted to be sold exceeded the value of the machines, records and accessories, although the jury found the good will to be of no value; such affirmation or representation being mere dealer's talk.

CONTRACT OR TORT, begun as an action of contract by writ dated January 5, 1920, for breach of warranty in the sale by the defendant to the plaintiff on August 5, 1919, of "talking machine stock, records, accessories and rights, together with certain rights in a so called Red Seal requisition," and in failing "to deliver to her at all the so called Red Seal requisition or rights under the same"; and on April 13, 1922, amended to become an action of contract or tort with a

second count in deceit, which was subsequently further amended.

In the Superior Court, the case was referred to an auditor. Material findings by the auditor and proceedings relating to his report are described in the opinion.

The action was tried before *Qua,* J. It was agreed by the parties that before the sale to the plaintiff the defendant under contracts with the Victor Talking Machine Company had become entitled to receive one thousand one hundred and twenty-three records and that it and that company had agreed that it should receive in lieu of such records the sum of $987.30 in cash. Other material evidence at the trial, rulings there made relating to the auditor's report, and motions by the defendant for the ordering of verdicts, are described in the opinion.

The defendant made sixty-nine requests for rulings. So far as not given, they relate to the subject matter described in the opinion. Subject to exceptions saved by the defendant, the judge submitted to the jury questions which, with the answers of the jury thereto, were as follows:

"1. Does the phrase 'rights and interests under its contract' with the Edison and Victor Talking Machine Companies as used in the agreement of August 5, 1919, exhibit 6, include the privilege of receiving records under the so called Red Seal requisition?" The jury answered: "Yes."

"2. Is or is not the defendant liable to the plaintiff for false and fraudulent representations that the merchandise contracted to be sold was of the value of $19,303.44?" The jury answered: "Yes."

"3. If the jury answers the last preceding question 'Yes' then answer this question: What was the actual market value of the merchandise contracted to be sold?" The jury answered: "$11,944.28."

"4. Is or is not the defendant liable to the plaintiff for false and fraudulent representations that the Cowan machines were better than the Victor machines?" The jury answered: "Yes."

"5. If the jury's answer to the last preceding question is 'yes' then answer the following question: What was the

difference between the fair market value of the Cowan machines contracted to be sold if they had been as good as Victor machines and their fair market value as they actually were?" The jury answered: "$6,471.85, value of Cowan machines if as good as Victors; $2,500.00 true value of Cowan; $3,971.85 difference in value."

"6. Is or is not the defendant liable to the plaintiff for false and fraudulent representations that the Cowan machines were perfect in every way?" The jury answered: "Yes."

"7. If the jury's answer to the last preceding question is 'yes' then answer this question: What was the difference between the fair market value of the Cowan machines contracted to be sold if they had been perfect in every way and their fair market value as they actually were?" The jury answered: "$3,971.85."

"8. Is or is not the defendant liable to the plaintiff for false and fraudulent representations that the value of the good will contracted to be sold exceeded the value of the machines, records and accessories?" The jury answered: "Yes."

"9. If the jury's answer to the last preceding question is 'yes' then answer the following question: What was the actual value of the good will sold?" The jury answered: "Nothing."

After the jury had answered the questions, the trial judge on the answers to questions and answers numbered 1, 2 and 3, subject to the defendant's exception, directed a verdict as follows: On the first count for the plaintiff for $987.30 and interest, making a total sum of $1,254.91; on the second count for the plaintiff for $7,359.16.

The judge further ruled that the plaintiff was not entitled to recover for false and fraudulent representations respecting the value of the good will contracted to be sold by the defendant to the plaintiff and, on the items of the plaintiff's claim to which the eighth and ninth questions to and answers by the jury referred, ordered a finding for the defendant.

Both parties alleged exceptions.

*J. B. Jacobs*, (*H. G. Jackson* with him,) for the defendant.
*James J. McCarthy*, for the plaintiff.

PIERCE, J.   This action, begun on January 5, 1920, in contract, was amended by leave of court on April 13, 1922, into an action of contract or tort, with a count in tort in the nature of an action of deceit.   On May 1, 1922, the case was referred to an auditor, who filed the report incorporated in the bill of exceptions on July 16, 1923.

The contract in full is set out in the report.   In substance, the first, second, third and fourth clauses thereof provide for the sale at named prices of "The Edison Talking machine stock 'as is' "; of "The Cowan Machine stock 'as is' "; of "The Supertone and Burrows talking machines 'as is' "; and of "The Victor Talking Machine stock 'as is.' "   The fifth, sixth and seventh clauses provide for the sale at named prices of "Victor Records," "Edison" records and "Sundry and Accessory stock."   "The total value of the above stock and records and accessories to be . . . ($19,303.44), subject only to such exceptions as mentioned herein."   By the terms of the contract the defendant assigned to the plaintiff "all its rights and interests under its contract with the Edison and Victor Talking Machine Companies, inasmuch as its rights under this contract are transferable or assignable; and also the good-will of its talking machine business, but expressly reserves to itself to the use of the name of American Piano Company or Chickering and Sons, and the said Mrs. Etta Reinherz agrees not to use in any way the name or any part of the name of the said American Piano Company, Chickering and Sons Division."   The contract further provided that the stock, records and accessories "shall be already for delivery and accepted on or before the first day of September, A.D. 1919.   It is hereby agreed that the delivery is to be made at 169 Tremont Street, the place of business of the said American Piano Company, Chickering and Sons Division."

The auditor found and sets out a construction put upon the phrase "as is," found in clauses one, two, three and four of the agreement, above referred to, made by one George R. Mance, who acted for the defendant with full authority to make the sale and any part of the sale, before the signing of the agreement, at the request of the plaintiff; and further found that she relied upon the explanation and executed the

agreement believing that the explanation thus given was a true explanation and that no other explanation could or would be put upon the words in the said agreement. The court, on motion of the defendant, ordered that that portion of the auditor's report be struck out; and recommitted the report to the auditor to restate the damages, "without prejudice to the rights of the plaintiff or the defendant to object to the report as hereby modified or to any part thereof at the time of the trial of the action." At the trial to a jury the plaintiff offered the auditor's report. The defendant objected thereto and excepted to its admission, specifically calling attention to portions of it which the defendant considered "prejudicial, incompetent, irrelevant and immaterial." The trial judge admitted the report over the defendant's objection and exception.

After the close of the evidence, the plaintiff, subject to the exception of the defendant, was allowed further to amend her declaration in order to comply with the rule of *Parker* v. *Moulton*, 114 Mass. 99. The allowance of the amendment was entirely within the discretion of the court. G. L. c. 231, § 51. *Pizer* v. *Hunt*, 250 Mass. 498.

The defendant moved that a verdict be directed on each count. The motion was denied and the defendant excepted. The case was submitted to the jury on issues framed by the trial judge; and after the jury had answered the issues subject to the defendant's exception, the judge directed a verdict for the plaintiff on the first count for $987.30 and interest, a total of $1,254.91; and a verdict for the plaintiff on the second count in the sum of $7,359.16.

From the testimony of witnesses at the trial, and from the auditor's report, the jury would have been warranted in finding that the defendant, in July, 1919, conducted a branch retail piano store at 169 Tremont Street, Boston, under the style of Chickering and Sons; that the business was divided into several departments, among others a phonograph department, which purchased at wholesale and sold at retail phonographs, talking machines, talking machine records and accessories; that one George R. Mance was employed as manager, and as such had full authority to make

the sale in question to the plaintiff; that the plaintiff, a woman beyond middle life, was and had been for about twenty-five years a manufacturer of ladies' blouses and dresses in Boston, that she was familiar with business and business dealings and methods in her own line, but was not familiar with the talking machine business, knew nothing about it and was dependent for her knowledge of this business upon information received from others; that in July, 1919, the defendant, to make room for its music roll department, decided to dispose of its talking machine department; that Mance, who had the matter of selling the talking machine department in charge "right on the heels of the orders which came from New York to sell out this talking machine business," in early July, 1919, got in touch with various talking machine dealers and inquired of them what the chances would be of disposing of it quickly; that he then went to Jordan Marsh Company to see if he couldn't get rid of it and to Filene's to see if that company wanted to take it. There was evidence that neither Filene's nor Jordan Marsh Company seemed interested or that any one came to ask about it.

At this juncture, the plaintiff learned from outside sources that the talking machine department of Chickering and Sons was for sale, and in July, 1919, went to the store of the defendant to make inquiries upon the subject. She there saw the manager, Mance, and had a conversation with him. He told her that the phonograph business was for sale, that the stock was worth around $20,000 and that the rights were worth more than the stock. On August 1, 1919, she again saw Mance at the store; she told him she had been in the manufacturing business, a big business, but she knew nothing about the phonograph business; she had been through sorrow and lost her only son and wanted to find an easier business. Mance "told her that the phonograph business would be a fine business for her, and that she need not fear because she was not experienced. He said, 'We will give you all possible assistance in the business. The Chickering people are very responsible people and they will not take any advantage of you.'" He said there were a good many people

after the business and he would not hold it unless the plaintiff gave him a binder. Mance told her in response to her request for further time that he wanted to dispose of the department immediately and wanted to get a reply right away. She said she wanted further time as she wanted her brother to look over the stock. Mance agreed to give further time if she made a deposit, and the plaintiff paid $100 and signed an agreement giving her an option to purchase the department on or before the following Wednesday, otherwise to forfeit all rights under the agreement, and the $100.

The plaintiff brought her brother and his partner, one Isaacs, who were interested in a talking machine business in Scranton, Pennsylvania, expressly to advise in relation to her purchase. The auditor found that a few days later, at the hotel Touraine, the plaintiff and Mance had the following conversation:

"Mrs. Reinherz: 'I am very much worried, very nervous. I do not understand this business, and I am putting into it the savings of a lifetime.'

"Mr. Mance: 'You need not worry. You have a beautiful business. It is a wonderful business. Before Christmas we did not have an instrument left in the place, and every instrument has come in since.' "

Before the agreement was signed, the following conversation took place between the plaintiff and Mance:

"Mrs. Reinherz: 'I am very much afraid of purchasing Cowan machines because they have a very poor reputation among people who know them, and very few people know about that phonograph.'

"Mr. Mance: 'That phonograph is better than the Victor. The wood is real mahogany. It has a wonderful motor, and it is made for the Chickering people only.' "

The auditor finds that the plaintiff examined only the goods in the show-room of the defendant's store — a few pieces; that she was not familiar with such merchandise; that "On the day the 'agreement' was signed," before the agreement was signed, Mance told her "the goods were up in crates in the warehouse, and that they would be opened for her examination as they were delivered to her, that they were

in perfect condition, and that anything that was not right, Chickering and Sons would make right, that she could positively trust them." Respecting this the master found that "neither Mr. Barite, the plaintiff's brother, nor Mr. Isaacs went to the store house of the defendant."

On August 5, 1919, immediately before the agreement was signed, Mance said to the plaintiff: "There is nothing the matter with the Cowans. I assure you that you will never have a bit of trouble with them. They are not very well known here in the East, and we were preparing an extensive advertising campaign on them . . . . We have had a great success with them . . . . All the machines we have here have come in since the first of January. As a matter of fact, the great proportion of it is still in the crates as we received it."

The auditor in substance found that the goods purchased, when delivered, were in bad and damaged condition — not one instrument complete; that not a single Cowan machine would function properly; that the Cowan machines delivered were not merchantable and saleable machines; that they were purchased from a bankrupt concern in Chicago and delivered to the defendant in October and November 1918, and were not made specially for Chickering and Sons division; that they were not equal to but were inferior to the Victor machines; that the motor of the Cowan machine was inferior in quality and material and in its construction; that one of the Edison machines delivered to the plaintiff was without a motor, lacked essential parts, and its cabinet was scratched and needed refinishing; that several other Edison machines were without parts, and the cabinets were scratched and gouged; that they were not saleable, and to be saleable required a good deal of time and work to be spent on them. He specifically found that the plaintiff was induced to buy, and did buy, the phonograph business of the defendant by means of false and fraudulent representations by the defendant to her; that she did not make an examination of the goods sold to her sufficient to enable her to know the true character and condition of such goods and merchandise, and

that she was kept from making such examination by false representations to her, upon which she relied.

There was no error in the refusal of the judge to direct a verdict for the defendant on the first count; nor in the submission to the jury of issue numbered 1. There being nothing in the contract by which it could be determined definitely what was intended by the parties by the sale to the plaintiff by the defendant of "all its rights and interests under its contract with the Edison and Victor Talking Machine Companies," it was proper for the plaintiff to put before the jury all circumstances which would enable them to determine as a fact the measure of the right, if any, of the defendant to receive and assign Red Seal requisition records to the plaintiff, and whether it was intended by the defendant, as rightly understood by the plaintiff, that the defendant intended by the terms of its contract to transfer its rights to receive the Red Seal records to the plaintiff. It is admitted that no Red Seal requisition records were delivered; and there was evidence that their value was the sum which the jury were directed to find, following upon their determination that the agreement included "the privilege of receiving records under the so called Red Seal requisition." The submission of the issue numbered 1 to the jury was justified by *Smith* v. *Vose & Sons Piano Co.* 194 Mass. 193, 200, and *Way* v. *Greer,* 196 Mass. 237, 246. The exceptions saved to the refusal to direct a verdict for the defendant, to the submission to the jury of issue numbered 1, and to the direction of a verdict for the plaintiff, must be overruled.

The refusal to direct a verdict on the second count was right, and the exception saved thereto must be overruled. The contention of the defendant is unsound, that the issue numbered "2. Is or is not the defendant liable to the plaintiff for false and fraudulent representations that the merchandise contracted to be sold was of the value of $19,303.44?" was improperly submitted to the jury because of G. L. c. 106, § 14, which reads: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to

induce the buyer to purchase the goods, and if he purchases the goods relying thereon.   No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty."

Before the adoption of St. 1908, c. 237 (now G. L. c. 106) an action of deceit would lie for breach of warranty.   *Norton* v. *Doherty,* 3 Gray, 372, 373.   *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, 274.

We think the provision of the statute as to affirmation of the value of goods sold should be limited to actions sounding in contract; and should not, by construction, be extended to limit or impair rights as they existed before the passage of the statute, to recover in an action of tort damages suffered by reason of reckless or fraudulent misstatements of fact relating to value.   *Chatham Furnace Co.* v. *Moffatt,* 147 Mass. 403. *Andrews* v. *Jackson,* 168 Mass. 266, 269, explaining *Deming* v. *Darling,* 148 Mass. 504.   *Lynch* v. *Murphy,* 171 Mass. 307. *Rosenbush* v. *Learned,* 242 Mass. 297, 300.   It follows that the exception of the defendant to the submission to the jury of issue numbered 2, as also the exception to the submission to the jury of issue numbered 3, which determined the loss to the plaintiff as subsequently found by the jury, must be overruled.

The defendant contends that the issue numbered "4.   Is or is not the defendant liable to the plaintiff for false and fraudulent representations that the Cowan Machines were better than the Victor Machines?" and the issue number 5, which fixes the difference in value between the Cowan machines and the Victor machines, were improperly submitted for the reason (a) "as is" was in the contract, and (b) the representation was merely trade puffing.   The meaning of the phrase "as is" may vary with the conditions and circumstances of its use; and, where these are not determined, the intention of the parties using it is to be determined by the jury under proper instructions.   Without serious doubt, parties to a contract may agree that the terms of their agreement shall be construed to embody within its four corners every material element, and that no misrepresentation of fact, other than a false representation of the nature of the

instrument to be executed, shall be deemed to be a warranty in the case of a sale or lay the foundation for an action of deceit. To accomplish such a contractual situation the words to this end must be explicit, have no folds, and be' understood and intended by the parties unequivocally to effect such result. See *Whitney* v. *Boardman*, 118 Mass. 242; *American Historical Society, Inc.* v. *Storer*, 232 Mass. 372; *S. Pearson & Son, Ltd.* v. *Dublin Corp.* [1907] A. C. 351, 362, 365. Such an understanding is not shown in the case at bar by the terms of the contract or by the conditions and circumstances of its drafting and execution. It follows that the contention of the defendant, that the judge should have ruled the plaintiff could not rely on this representation because of the presence of the phrase "as is" in the contract, is unsound.

The contention in reference to (b) is likewise unsound. To say of a thing that it is "better" than another thing manifestly may be an expression of opinion, or a statement of fact. Whether it be the one or the other may depend in a given case upon the degree of the representor's knowledge of the thing described, as well as upon the ignorance or want of knowledge of the person who is induced to rely upon the misstatement, if it be one. Such a statement presents a question for the jury; this was done in the case at bar with appropriate instructions. The exceptions saved to the submission of the fourth issue, and the subsidiary issue numbered 5, are overruled.

The exception saved to the issue numbered "6. Is or is not the defendant liable to the plaintiff for false and fraudulent representations that the Cowan machines were perfect in every way," and to the subsidiary question and answer as to the difference in value between the machines contracted to be sold as perfect and those in the condition they were delivered, must be overruled. For reasons above stated, the evidence to support the issue did not as a matter of law contradict the written agreement, where it is stated that the machines were sold "as is."

The defendant's motions to strike out many parts of the auditor's report and its motion to discharge the auditor's

report, in the main rest upon the unsound contention that the conditions, circumstances and conversations existing and had before the execution of the "agreement" were impertinent, in that the conditions and circumstances were not needed or useful to a full construction of the "agreement," and because the conversations were merged and lost in the written "agreement," even though such conversations tended to prove that the "agreement" was made and entered upon in reliance upon material, intentional false representations of fact. Unless as a matter of law the phrase "as is" controls, it is plain the plaintiff had the right to give in evidence the circumstances and the conversations between herself and Mance which gave meaning and character to the words of alleged false representations, and tended to prove the probable and reasonable reliance of the plaintiff thereon to her harm. For reasons hereinbefore stated, the phrase "as is" does not control and the motions were denied rightly.

We do not think any useful end will be subserved by a discussion in detail of the substantiality of any one of the remaining exceptions. However, we have considered them all and do not think the defendant is entitled to a new trial because of material errors shown by them.

The ruling and direction that the plaintiff was not entitled to receive damages because of false and fraudulent representations respecting the value of the good will was right. The affirmation was manifestly a declaration of opinion, or, if not such, was within the protection of representations classified as dealer's talk. *Deming* v. *Darling, supra.* No sensible person could understand that the value of the good will sold, with its limitations, was other than problematical.

It results the plaintiff's and the defendant's exceptions must be overruled.

*So ordered.*