JOHN A. FRYE SHOE COMPANY *vs.* ARTHUR A. WILLIAMS.

Middlesex.     October 7, 1942. — December 30, 1942.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Fraud. Deceit. Practice, Civil,* Auditor: findings, objections to report, stenographer, report of evidence, recommittal; Entry of judgment.

No error appeared in an entry of judgment for the plaintiff in an action of contract or tort with counts of the declaration alleging, respectively, breach of warranty and deceit in a sale by the defendant to the plaintiff, where the plaintiff was not required to elect between the counts, an

auditor, whose findings were to be final, had made a general finding for the plaintiff, and facts found by him warranted a finding for the plaintiff on the count for deceit.

A finding for the plaintiff by an auditor, who heard an action for deceit and whose findings were to be final, was warranted by findings in substance that the parties were both shoe manufacturers of long experience; that, in offering composition soles for sale to the plaintiff "as is," the defendant represented that they were "in good condition" and fit for the uses to which the plaintiff intended to put them, whereas he knew that in fact they were not fresh material and would not give reasonable wear; that the plaintiff did not know the age of the soles and could not have discovered by looking at or flexing them that they were too old to use or were defective; and that the plaintiff, after taking and using the soles in reliance upon the defendant's representation, suffered damage because of their condition.

A finding by an auditor whose findings were to be final, that a stenographer not selected by him was not approved by him under Rules 89, 90 of the Superior Court (1932) was not shown to be erroneous by the fact that the stenographer was sworn by the auditor at the request of one of the parties.

A party to an action heard by an auditor whose findings were to be final was not entitled to a summary of evidence in connection with his objection that the evidence was insufficient to support a certain finding, where a stenographer had not been selected or approved by the auditor under Rules 89, 90 of the Superior Court (1932).

The granting of a motion to recommit to an auditor whose findings were to be final was not required by an objection, appended to the auditor's report, that certain evidence was admitted by the auditor improperly, where the objecting party had not raised that question at the time of its admission.

CONTRACT OR TORT.   Writ in the Superior Court dated May 15, 1939.

Judgment for the plaintiff was ordered by *Swift*, J.

*A. T. Handverger*, (*J. L. Doyle* with him,) for the defendant.

*W. Temple*, for the plaintiff.

Cox, J.   This is an action of contract or tort, the count in contract in the declaration being to recover damages for an alleged breach of warranty in the sale of composition soles that are used in the manufacture of shoes, and the count in tort being to recover damages for the alleged fraudulent representations of the defendant concerning the subject matter of this sale.· The case was referred to an auditor, whose findings of fact were to be final.   The defendant's motion, hereinafter referred to, to recommit the report to the auditor was denied, subject to his exception.   He also

excepted to the allowance of the plaintiff's motion for judgment.

The auditor found that the plaintiff and the defendant had been manufacturers of shoes for many years, the plaintiff in Marlborough and the defendant in Holliston in this Commonwealth. On October 20, 1936, the defendant, by letter, offered the plaintiff a quantity of composition soles, stating that they were in "original cartons, in good condition and a good run of sizes," and that if the plaintiff was interested, he would send samples and quote prices. By letter dated October 21, 1936, the plaintiff asked for samples and quotations of prices and quantities. Two days later samples were sent, and, on the same day, the defendant wrote to the plaintiff offering for sale approximately twenty-two thousand two hundred fifty pairs of the soles "as is" at fifteen cents per pair with terms of payment. On the following day the plaintiff, by letter, purchased the soles and paid for them in accordance with its undertaking. The sample soles were examined by two of the plaintiff's representatives.

The soles were delivered about November 5, 1936, and in December the plaintiff made up a small quantity of shoes, using some of the soles, and continued so to manufacture shoes, so that on December 31, 1937, it had none of the composition soles on hand. In May, 1937, the plaintiff received complaints from its customers that the soles in question were breaking, and the defendant's attention was called to these complaints by letter on May 20, 1937. Considerable correspondence passed between the parties in reference to complaints received thereafter, and the plaintiff was requested by the defendant to take up the matter directly with the company that seems to have made the soles. This company sent a letter to the plaintiff, which was "incorporated" in one from the plaintiff to the defendant, wherein the company stated that it had been requested by the defendant to assist him in moving these soles for the reason that "he did not have any immediate use for them and that the soles had been in his factory for two years — perhaps some of them longer," and that the company would not guarantee soles against cracking that were "so old as

those sold by the defendant to the plaintiff." Until this letter was received, the plaintiff had no knowledge that the soles were not new. The defendant's purchasing agent and factory manager did not know how old the soles were, but finally testified that they were shipped to the defendant between January 4, 1933, and January 8, 1934. He also testified that he was satisfied that the complaints made by the plaintiff were true, and that the defendant discontinued using these soles in 1935 or the early part of 1936.

An expert in rubber products, including soles, testified that there is no way by which one can determine by examining or bending the soles whether they would crack; that it makes no difference whether the soles were nailed or sewed to shoes, and that the stiffness of the soles has no bearing on the question whether they will break or crack. He further testified that soles of this character should be stored in a well-ventilated, cool room, out of sunlight, if not to be used in a short time, and if they are not kept in such a room, they will deteriorate rapidly, but that the deterioration resulting from poor ventilation cannot be seen. He was shown a composition sole and testified that it could not be determined by looking at it or by flexing it whether it would crack; that a latent condition in composition soles caused them to crack and if they were kept in sealed cartons in a room that was not well ventilated and not cool, this would cause the soles to deteriorate. There was evidence that the soles had been stored by the defendant in the cellar of his office building; that the cellar was connected with the shipping room by a tunnel five by seven feet; that air circulated from this tunnel to the cellar, and that there were heater pipes attached to the ceiling of the cellar. There was no contention that the manner in which the soles were affixed to the shoes was improper. Many of the soles cracked or broke without having been worn, and many cracked and broke after having been worn very little. The price of freshly made soles was twenty-one or twenty-two cents a pair, but it is a common practice for manufacturers of shoes to sell below the market price materials that they have no further use for in the manufacture of their shoes.

The foregoing is taken from the first part of the auditor's report. Under the heading "Findings," the auditor found that the defendant knew the use to which the plaintiff intended to put the soles; that he represented to the plaintiff that they were in good condition and fit for the uses to which the plaintiff intended to put them; that the defendant knew these soles were not fresh material and, from his experience in the shoe business, knew that they would not give reasonable wear. He also found that the plaintiff, by looking at the soles or by flexing them, could not have discovered that they were too old to use or were defective; that the soles had no value in the market under their trade name, and stated that his reason for finding that the defendant knew that the soles were not fit for the uses to which he knew the plaintiff was to put them was because of his letters to the plaintiff, in which he said that the latter "must realize that in making these prices which were considerably under the market prices at that time, that . . . [the soles] were not particularly fresh material, as otherwise we would not have offered them for sale," and that it "seems ridiculous to me that you would be expecting us to offer to you any freshly made composition soles that we could use just as well as any one else." Further findings are that the defendant knew when he sold the soles that the plaintiff was engaged in the manufacture of shoes of substantially the same quality as those he manufactured, and that he would not have used the soles on shoes that he manufactured because they were not of merchantable quality. The auditor found that the plaintiff relied upon the representation of the defendant that the soles were in good condition, and was induced thereby to purchase them, and that the words "good condition," as used by the defendant, related to the soles and not to the cartons in which they were packed. He also found the amount of the plaintiff's damages, as to one item of which the defendant objects, and to which reference is hereinafter made.

Apart from the defendant's contentions as to his motion to recommit, he states in his brief that the issues for determination on the question of deceit are: (a) whether the words

"good condition" are to be construed as an expression of material fact or merely as an expression of opinion, (b) whether the facts as found by the auditor are sufficient as matter of law to establish that the representation made was fraudulent, and (c) whether the plaintiff was induced to rely upon the representation made by the defendant. The finding of the auditor for the plaintiff was general, without reference to either count. The counts were joined properly, and the action was one upon which a general verdict or finding could be taken, unless the plaintiff was, in the discretion of the trial court, required to elect upon which count it would proceed. *May* v. *Western Union Telegraph Co.* 112 Mass. 90, 93. *Morrin* v. *Manning*, 205 Mass. 205, 213. See *Higgins* v. *Gilchrist Co.* 301 Mass. 386. If the finding for the plaintiff was warranted on either count, it will support the judgment. The fact that the alleged misrepresentation relied upon was made before the soles were purchased "as is," is not conclusive against the plaintiff on its count for deceit. *Reinherz* v. *American Piano Co.* 254 Mass. 411, 421. *Bates* v. *Southgate*, 308 Mass. 170. See *New England Foundation Co. Inc.* v. *Elliott & Watrous, Inc.* 306 Mass. 177, 182.

Many of the cases decided in this Commonwealth have stated the general rule to be that false statements concerning the market value of property are held to be matters of opinion, judgment, or seller's talk, and do not afford any ground for a claim of damages in an action for false representations. In *Gordon* v. *Parmelee*, 2 Allen, 212, the rule is so stated. In that case, one of the alleged misrepresentations was of the soil of a farm and its capacity for productiveness and the keeping of stock, and it was said that such representations fall within that class of affirmations which, although known by the party making them to be false, do not, as between vendor and vendee, afford any ground for a claim of damages in deceit. In that case it was said, however, that such affirmations "relate to matters which are not peculiarly within the knowledge of the vendor, and do not involve any inquiry into facts which third persons might be unwilling to disclose" (page 214), and do not afford

the vendee any excuse for his own want of vigilance and care in omitting to ascertain whether they were true or false. This general statement of the rule is found in *Gaucher* v. *Solomon*, 279 Mass. 296, where it was said, at page 299, in quoting from *Mabardy* v. *McHugh*, 202 Mass. 148, 151, that where representations are made respecting a subject "as to which the complaining party has at hand reasonably available means for ascertaining the truth and the matter is open to inspection, if, without being fraudulently diverted therefrom, he does not take advantage of this opportunity, he cannot be heard to impeach the transaction on the ground of the falsehoods of the other party." There one of the alleged misrepresentations was as to the amount of rental of a floor of the building that was being purchased, and it was said that if the vendees considered this to be of importance, they could easily have ascertained the fact by making inquiry of the tenant before they purchased the property.

In the case of *Milliken* v. *Thorndike*, 103 Mass. 382, it was contended that the alleged misrepresentation was made, and should have been understood by the defendants, as only an expression of strong belief, and it was said, at page 385: "If a statement is honestly made as a matter of opinion, judgment or estimate, it is not in law a false representation, although the matter thus stated should turn out to be untrue. But if a fact which is susceptible of knowledge is stated by a party as of his own knowledge, and such representation is relied upon as the basis of a contract, and damage results to the party deceived, it is a legal fraud, the consequences of which must be borne by him who makes the statement. The representation in this case was of the latter description. It was of a fact, the existence of which was not open and visible, of which the plaintiff had superior means of knowledge, and the language in which it was made contained no words of qualification or doubt."

In *Pike* v. *Fay*, 101 Mass. 134, it was said, at page 137: "But so far as the representations upon which the defendant relies . . . were expressions of opinion, they are not fraudulent, so as to avoid the contract, unless the plaintiff

or his agent knew them to be untrue, or made them for the purpose or with the intent to deceive." In *Deming* v. *Darling*, 148 Mass. 504, Holmes, J., said that it was a mistake to say that bad faith might make a seller liable for what are known as seller's statements. But in *Andrews* v. *Jackson*, 168 Mass. 266, it was held, in an opinion by Knowlton, J., that it could not be said that a representation that a note was as good as gold was not intended to be, and was properly understood to be, a representation of facts within the defendant's knowledge. The learned justice then went on to distinguish the *Deming* case by pointing out that there the market prices of the bonds, the value of which, it was alleged, had been misrepresented, were easily accessible to the plaintiff. The case of *Stubbs* v. *Johnson*, 127 Mass. 219, was considered in the *Andrews* case. There the representation as to a note was that it was as good as gold, and it was held to be error to instruct the jury that if this was intended as a representation of the financial ability of the maker of the note, it was a statement of a material fact for which the defendant was liable. It was pointed out that it was error because a representation as to a man's financial ability to pay a debt may be made either as a matter of opinion, or as a matter of fact, and that the subject of the statement does not necessarily determine which it is. Quoting from the opinion in the *Stubbs* case, the court said: "It is often impossible . . . to determine, as matter of law, whether a statement is a representation of a fact, which the defendant intended should be understood as true of his own knowledge, or an expression of opinion. That will depend upon the nature of the representation, the meaning of the language used, as applied to the subject matter, and as interpreted by the surrounding circumstances, in each case. The question is generally to be submitted to the jury." (Pages 267–268.) Holmes, J., was a member of the quorum in the *Andrews* case. In the later case of *People's Savings Bank* v. *James*, 178 Mass. 322, 324, Holmes, C.J., in considering the question whether representations as to a person's solvency and credit were actionable, appears to concede that fraudulent representations as to the solvency of a third person

would give a right of action, citing *Bowen* v. *Carter,* 124 Mass. 426, and *Andrews* v. *Jackson,* 168 Mass. 266. He said, at page 325: "Possibly cases very near the line might be left to the jury, even where the import of the words used was undisputed. See *Morse* v. *Shaw,* 124 Mass. 59. For beside the distinction which has been taken between words purporting to be expressions of opinion and those which purport to be statements of fact, there is a distinction in the nature of the representations after their import is settled, and a jury might be called in as elsewhere in cases near the line." He went on to say that the representations alleged, "when standing by themselves, unqualified by any further circumstance, are of such elastic meaning and so obviously may be wholly dependent upon an optimistic view of his own case, that, when they are made by one party to a bargain, the other party relies upon them at his peril. Or if another form of words be preferred, it may be said that such a statement without more is to be taken to import only an expression of opinion, and that for that reason the other party follows it at his own risk." He pointed out that it was not alleged that the speaker knew that the person in question was insolvent.

In *Standard Oil Co. of New York* v. *Back Bay Hotels Garage, Inc.* 285 Mass. 129, 133, it was said: "Though value rests upon opinion, it is a fact, and one constantly found by juries. The fact of value may be stated falsely." (See cases cited.) See *Commonwealth* v. *Coshnear,* 289 Mass. 516, 522, and cases cited. In *Knowlton* v. *Keenan,* 146 Mass. 86, cases are referred to where it was said that it had been held that "if a person makes a representation of a fact as of his own knowledge in a matter susceptible of knowledge, and such representation is not true, or where in a matter of opinion, judgment, or estimate dishonestly and with the intent to deceive states that as of his own knowledge which is not true, and the party to whom the statement is made relies and acts upon it as true, and thus sustains damage, it is a fraud and deceit for which the party making it is responsible." (Pages 87 and 88.)

The line between what is a statement of fact and opinion

is often shadowy. In construing what is the true meaning of the language used, it is often necessary to consider the subject matter, the relationship of the parties, the opportunity afforded for investigation and reliance, and the attendant circumstances. If on the whole, any doubt is presented, it must be resolved by the jury or fact finding tribunal. *Reinherz* v. *American Piano Co.* 254 Mass. 411, 422.

The trend is not to extend legal immunity for falsehood of vendors in the course of negotiations for sales beyond the bounds already established. *Mabardy* v. *McHugh*, 202 Mass. 148, 149, 150, and cases cited. *Noyes* v. *Meharry*, 213 Mass. 598, 600. See *Vulcan Metals Co. Inc.* v. *Simmons Manuf. Co.* 248 Fed. 853, 856, 857. It will serve no useful purpose to attempt to review the many cases in our reports where the question has been considered whether a given form of words amounted to an expression of opinion, dealer's talk, or a statement of fact. We are of opinion that in the case at bar it cannot be said, as matter of law, that the representation of the defendant that the soles, the subject matter of the sale, were in good condition, was not a statement of fact, having in mind the implications involved in coming to this conclusion.

It is true that the parties were, as has been said, dealing at arm's length. The defendant knew when he made the sale that the plaintiff was engaged in the manufacture of shoes. He would not have used the soles himself because they were not of merchantable quality. He knew that they were not fresh material and that they would not give reasonable wear. He knew that they were not "particularly fresh material," and from the findings as to his experience as a manufacturer of shoes for many years, and from other findings as to the length of time the soles had been in his possession and the manner in which they had been stored, it could have been found that he must have known when he represented them to be in good condition, that they were not. It could have been found that he discontinued using these soles in 1935 or the early part of 1936. It was not until October, 1936, that he offered them for

sale, and it is a common practice for manufacturers of shoes to sell below the market price materials that they have no further use for in the manufacture of their shoes. It could have been found that the plaintiff could not discover that the soles were defective. The facts that must have been the basis of the defendant's representation were susceptible of actual knowledge.

It is true that the plaintiff, before it purchased the soles, asked for and received samples which were examined. It could have been found that they disclosed nothing by way of defects. The entire transaction, culminating in the sale, was completed in a few days. One manufacturer of shoes was selling soles to another. The defendant made his offer in writing stating that the soles were in original cartons, in good condition. It is not contended that they were not in original cartons, but the fact that they were, is not to be overlooked. He also wrote that the soles were a "good run of sizes." It cannot be said, in all the circumstances, that he did not intend to convey to the plaintiff his assertion that the soles were in condition for use in the manufacture of shoes, and, by the same token, it cannot be said that the plaintiff was not justified in taking him at his word. See Am. Law Inst. Restatement: Torts, § 525, comments b and c; § 539 (1), (2), comments (a), (b); *Harris* v. *Delco Products, Inc.* 305 Mass. 362, 367. We cannot disturb the finding of the auditor that the plaintiff relied upon the representation of the defendant.

In view of the foregoing conclusion, it is unnecessary to consider whether the plaintiff was entitled to recover on its first count for an alleged breach of warranty.

The defendant brought in twenty-three objections which are appended to the auditor's report. The bill of exceptions states that the defendant filed a motion, supported by affidavit, to recommit the report for further hearing for the reasons set forth in the defendant's objections, and upon the further ground that although the auditor was requested in writing to set forth sufficient evidence, upon which his rulings as to the admission of certain evidence were made, he had failed to do so. See *Howland* v. *Stowe*, 290 Mass.

142, 145.  Although what purports to be the affidavit is printed in the record, it does not appear to be a part of the bill of exceptions even by reference.  The motion to recommit was denied after hearing.

The auditor states that before testimony was taken, a stenographer was sworn at the defendant's request, but that she was not approved by him.  The first objection is to this finding, coupled with the request that a summary of the conversation that took place between counsel and the auditor as to this matter be appended to the report.  The question whether the stenographer was selected or approved by the auditor is important because of the provisions of Rule 89 and the first two paragraphs of Rule 90 of the Superior Court (1932).  Unless the stenographer is so selected or approved, where an objection raises the question whether the evidence was sufficient in law to support a finding of fact made by the auditor, no summary of the evidence shall be made without special order of the court.  There is no contention that the stenographer was selected by the auditor, and we are of opinion that his finding that she was not approved by him must stand.  Administering an oath at the request of one counsel or the other to one whom one of the parties has brought to the hearing is not equivalent to such selection or approval.  *Russo* v. *Thompson,* 294 Mass. 44, 47.  It is fair to assume that the trial judge who heard the motion to recommit properly. denied it in this respect.

The next objection is that the auditor failed to state under which count of the declaration he made his finding for the plaintiff.  We are of opinion that, for reasons already stated, the auditor was not required to do this.  The third and fourth objections are that the auditor has failed to set forth the contract entered into between the parties and the negotiations leading to the making of the contract, and that certain exhibits should be made a part of the report in their entirety.  The ascertainment of the terms and provisions of a contract as distinguished from its construction, presents a question of fact.  *Murphy* v. *Nelson,* 306 Mass. 49, 50.  If it be assumed that any question of law is presented by these

objections, however, an examination of the exhibits, as printed in the record and made a part of the objections, discloses that a "brief, accurate and fair summary" of so much of them as is necessary, appears in the auditor's report. See Rule 90 of the Superior Court (1932). What has just been said applies equally to the defendant's fifth and seventh objections. The defendant contends that seven of his objections deal with the sufficiency of the evidence to support findings of the auditor, and that under the provisions of said Rule 90 he was entitled to a summary of the evidence. But, inasmuch as it does not appear that this rule was complied with as to the selection or appointment of the stenographer, the defendant was not so entitled.

Another objection is that the auditor allowed the plaintiff damages for shoes that showed no defect. The report, however, goes into the condition of the soles that the plaintiff bought from the defendant which went into the manufacture of these shoes. His findings as to damages sustained by the plaintiff on account of these shoes cannot be disturbed. Two objections are that the auditor quoted portions from two letters that were written by the defendant to the plaintiff, and the implication is that the letters should have been set out in their entirety. These objections did not require a recommittal of the report.

The final material objection of those that have been argued is that during the course of the hearing, evidence was admitted over the objections and exceptions "duly saved" by the defendant, and the request is made that a brief, accurate and fair summary of this evidence be appended to the report. This evidence appears from the objections to consist of fourteen letters, together with "testimony" as to the damage sustained on account of the shoes "which were not defective." Neither the bill of exceptions, nor the report that is made a part thereof, shows that any exceptions were taken to the admission of any evidence. The allegations of the motion to recommit are quoted in the bill of exceptions but cannot be taken as establishing that the auditor made any rulings whatever as to the admissibility of evidence. Rule 89 of the Superior Court (1932)

provides, in part, that, upon a motion for recommittal, no question of law, which was or could have been raised before the auditor, shall be open as of right unless raised by objection appended to the report.  This rule also provides that the provisions of the first and second paragraphs of Rule 90 shall apply only to the report of an auditor whose findings of fact are to be final.  The second paragraph of said Rule 90 provides, in part, that unless the court expressly orders otherwise, whenever any objection presented to the auditor raises a question of law which depends upon evidence not reported, the auditor, upon written request presented with the objection, shall append to his report, for the sole purpose of enabling the court to determine such question of law, a brief, accurate and fair summary of so much of the evidence as shall be necessary for such purpose.  General Laws (Ter. Ed.) c. 221, § 56, provides, in part, that whenever the auditor makes a ruling as to the admissibility of evidence and objection is taken thereto, he shall, if requested so to do, make a statement of such ruling in his report.  But as has already been said, it does not appear that any objection was made to any of the evidence.  We are of opinion that the orderly procedure at a hearing before an auditor requires that if a party thinks that any evidence should be admitted or excluded, it is his duty to raise the question at the time the evidence is offered.  As was said in *Barrows* v. *Checker Taxi Co.* 290 Mass. 231, at page 235: "There was no error of law in the denial of the motion to recommit the auditor's report. That is a proper method to raise questions as to the correctness of rulings touching the admission or exclusion of evidence where the auditor's findings of fact are final.  No such errors appear on the face of the report.  In all other respects such a motion is addressed to judicial discretion."  It must be assumed that, if at the hearing on the motion to recommit, the trial judge was satisfied that the defendant had seasonably objected to the admission of evidence, he would have ordered the report recommitted so that the soundness of any ruling made by the auditor could be determined.  We cannot say on the record before us that the motion was improperly denied in this respect or in any others.

*Exceptions overruled.*