Gardner, J.
This case arises from a suit commenced by Julie Hilton (hereinafter referred to as the plaintiff/appellant and/or buyer) against Linda A Traficanti (hereinafter referred to as the defendant/appellee and/or seller) in a four count complaint commenced in the Westfield Division of the District Court Department alleging breach of contract, fraud, deceit and intentional misrepresentation.
After trial held on April 4, 2002, in which five (5) witnesses testified, the court awarded judgment for the defendant/appellee on all four counts of the plaintiff/appellant's complaint
*14 Aggrieved by the judge’s findings, the plaintiff/appellant has appealed pursuant to Dist/Mun. Cts. RA.D.A, Rule 8C.
The plaintiff/appellant argues that the trial judge erred in several respects in finding that the statement of the defendant/appellee that the home, being sold, had an adequate potable water supply for normal household use was an expression of opinion and not fact.
Further, the plaintiff/appellant argues that the court erred in finding that the defendant/appellee did not introduce sufficient evidence to establish what an adequate potable water supply is for normal household use.
In addition, the plaintiff/appellant argues that the court erred in finding that the plaintiff/appellant had been put on notice of a problem with the adequacy of the well.
The facts that are indicated from the record that are necessary for an understanding of the issues are as follows:
BACKGROUND
The defendant/appellee owned and resided in a single family home (“locus”) located at 399 North Loomis Street in Southwick, Massachusetts for approximately twenty-five (25) years.
For the entire time she and her family resided at the locus, the domestic water source was provided by a private well.
In 1999, file defendant/appellee listed the locus for sale with a real estate broker in Southwick, Massachusetts. As part of the listing agreement, the defendant/appellee executed a document entitled “Seller’s Description of Property” on May 5, 1999 which was provided by the Massachusetts Association of Realtors.
The description form expressly states that the seller authorizes the real estate broker (s) to provide the information contained in the description form to prospective buyers.
In section 15 of the description form, the seller stated that the drinking water source was a private well and that the age of the pump and date last tested was “unknown-Charles Pratt.”
Also in section 15, the seller answered the preprinted question d) “Any pressure problems.” with a one word answer, “NO.”
Mr. Charles Pratt, who testified at the trial, had serviced the pump for the well for the defendant/appellee periodically.
During the time the locus was listed for sale, the broker showed the house to approximately eight other potential buyers, however, the subject of the well was never discussed with any of those potential buyers.
The buyer and her parents viewed the locus in the time frame of late May or early June 1999.
On June 17,1999, the buyer executed the aforementioned description form and a Purchase and Sales Agreement (“P and S Agreement”). The Purchase & Sales Agreement was promulgated by the Greater Springfield Association of Realtors Inc.
Contained in the Purchase and Sales Agreement are the following provisions:
19. “MISCELLANEOUS REPRESENTATIONS
a. In the event that a private water source is servicing the premises, the SELLER represents that the water source is providing adequate amounts of potable water for normal household use as of the date hereof.”
20. “RIGHT TO INSPECT; ACKNOWLEDGMENT. This Agreement is subject to the right of the BUYER to obtain, at BUYER’S own expense, an inspection of the premises and written report to include, but not be limited to tire adequacy and suitability of the water supply.”
In addition, paragraph 20 also contains the following provisions, in capital letters: *15 “BUYER ACKNOWLEDGES THAT: ... (c) EACH ITEM WAS SUBJECT TO DIRECT INQUIRY BY BUYER AND THE BUYER HAS BEEN SO ADVISED;...”
Prior to the execution of the Purchase and Sales Agreement, the buyer had a home inspection performed on the locus by Affordable Homes Inspections (“AHI”). AHI and the buyer, by their agreement and contract for the home inspection, agreed as follows: “7.3 The inspector is not required:... E. observe... 3. on site water supply quantity and quality....”
The buyer attended the home inspection with the inspector from AHI and the buyer observed the inspector draw water from all the faucets and the shower in the locus. Also, the buyer had lived with her parents, in their home which was also serviced by a private well.
Notwithstanding the contract limitation of AHI regarding the water quality and quantity, in the eleven page contract and report by AHI, dated June 16,1999, the buyer was informed of the following observation by the inspector: “water pressure marginal PSI22 at inspection. May wish to have pump further evaluated. Functional flow.”
Prior to the closing the buyer did not have an inspection specifically regarding the quantity of the water from the well, nor did she or her father contact Charles Pratt to ask him what work he had performed on the well or the well pump.
The buyer consummated the purchase and closed on the locus and took title after the home inspection.
After the closing, the buyer and her daughter moved into the locus.
In the first part of August 1999, the buyer was washing and cleaning the locus, when the water from the faucet slowed to a trickle.
If the buyer took a shower and washed the laundry at the same time, she would lose water from the well.
Thereafter, the buyer made a conscious effort to conserve water usage at the locus, until she installed a new well.
DISCUSSION
The trial judge made findings of fact and offered detailed analysis, arriving at the conclusion that the key issue in the case was whether the seller’s statement as to the adequacy of the water supply for normal household use was one of opinion or feet Notwithstanding a history of well problems, the trial judge found that the statement was simply seller talk, to wit; an opinion, and, further that the plaintiff had not introduced any evidence to prove what an “adequate” water supply for a normal household would be.
Upon review, the trial judge’s findings are accorded the customary appellate deference in recognition of the trial judge’s superior position to assess the weight and credibility of the evidence. Starr v. Fordham, 420 Mass. 178, 186 (1995). “If the trial judge makes one of several possible choices of what facts are supported by the evidence, the judge’s choice is not clearly erroneous.” W. Oliver Tripp Co. v. American Hoechst Corp., 134 Mass. App. Ct. 744, 751 (1993). The trial judge may disbelieve even uncontroverted testimony. Calderone v. Wright, 360 Mass. 174, 176 (1971). Thus, the burden on the plaintiff is indeed a heavy one. The findings of the trial judge will be disturbed only if “on the entire evidence,” we are “left with the definite and firm conviction that a mistake has been committed.” Demoulas v. Demonios Super Markets, Inc., 424 Mass. 501, 509 (1997); Rood v. Newberg, 48 Mass. App. Ct. 185, 191 (1999).
In arguing that the trial court’s findings were clearly erroneous, plaintiff/appellant raises several issues.
The plaintiff/appellant asserts that the defendant/appellee’s representation that the well was “providing adequate amounts of potable water for normal household use” is a misrepresentation and/or a breach of the contract
The gravamen of the plaintiff/appellants argument is that the defendant/appel-lee’s representation of an “adequate water supply” was a misrepresentation of a fact and not an opinion.
Under Massachusetts law,
*16 To sustain a claim of misrepresentation, a plaintiff must show a false statement of a material feet made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiffs detriment... The speaker need now know ‘that the statement is false if the truth is reasonably susceptible of actual knowledge, or otherwise expressed, if, through a modicum of diligence, accurate facts are available to the speaker.’ Zimmerman v. Kent, 31 Mass. App. Ct. 72, 575 N.E.2d 70, 74 (1991) (quoting Acushnet Fed. Credit Union v. Roderick, 26 Mass. App. Ct. 604, 530 N.E.2d 1243, 1244 (1988)).
The trial judge found that there had been a history of well problems. The court also concluded that each time the well was used for approximately a fifteen (15) to twenty (20) minute time period, that user of the water had to wait for the well to replenish itself for a four (4) to five (5) hour time frame.
The seller had informed the buyer on the “Seller’s Description of Property” form of the name of Charles Pratt, who had knowledge of the well at the locus.
The question of whether a statement is a fact or merely an opinion is not always easily discerned by courts.
The issue “will depend upon the nature of the relationship, the meaning of the language used, as applied to the subject matter, and as interpreted by the surrounding circumstances in each case.” See John A. Frye Shoe Co. v. Williams, 312 Mass. 656, 663 (1942).
Generally, the question of whether a statement is one of fact or opinion should be left to the finder of fact. Frye, supra at 663.
The trial court, as the fact finder, held that the seller’s statement about adequacy was an expression of opinion and not of fact
The trial judge also concluded that the buyer had not introduced any evidence to prove what an “adequate” water supply would be for a single family house.
Although there was testimony as to industry guidelines, the trial judge concluded that the buyer did not sustain her burden to satisfy a breach of contract claim, nor a misrepresentation claim.
It is well settled law that for a plaintiff to prevail in the trial court, on a breach of contract claim or a misrepresentation claim, she would need to prove by a preponderance of credible evidence that there was a recognized standard for water usage for normal household use and that the seller’s well fell below that standard.
In this case, the trial judge found that the buyer has not proven if there was a standard for water quantity for single family homes, what that standard might have been, and that the buyer had certainly not proven that the seller’s well fell below any such standard.
The buyer in her pleadings and oral argument places a substantial amount of reliance on the case of Briggs v. Carol Cars, Inc., 407 Mass. 391 (1990). In Briggs, supra, the defendant was a dealer in used automobiles and the plaintiff buyer purchased a used motor vehicle for $2,895 on July 19,1982.
The defendant represented to the plaintiff that the automobile was in good condition, that it had one previous owner, low mileage, that the defendant had repaired some items on the automobile and had given it a mini tune-up, i.e. changed the oil and oil filter and installed new spark plugs.
Prior to the purchase, the buyer only took the automobile for a test drive and she did not have it inspected by a mechanic.
On July 21, 1982 the buyer noticed smoke coming from the exhaust, and in the next seven (7) days the buyer had to add nine (9) quarts of oil to the engine.
In addition, the automobile stalled frequently and had rust and rot in the bumper and “strut towers.”
A repairman estimated that it would cost $1,530.97 to repair the automobile.
In Briggs, supra, the Court stated that “a statement that, in form, is one of opinion *17 in some circumstances may reasonably be interpreted by the recipient to imply that the maker of the statement knows facts that justify the opinion. RESTATEMENT (SECOND) OF Torts, section 539 (1977).”
The Court further held in Briggs, supra, that the statement that the vehicle was in “good condition” reasonably implied that it was safe and operable and that the oil requirements would be far less than the buyer experienced.
Also the Court found such circumstances were present due in large measure of an “uninformed person” purchasing a used vehicle from a dealer in such goods. See Briggs, supra at 396.
The buyer’s reliance on Briggs, supra, is inapposite from the case sub judice.
The seller was not a dealer in the sale of houses, and further she stated only that the well was “adequate” for amounts of potable water for normal household use.
In addition, the seller disclosed the identity of Mr. Pratt, who was an individual she had engaged over the years to service her well.
The buyer had the home inspected prior to the purchase by a professional home inspector and the home inspector stated that the water pressure was marginal and that there was functional flow. However, the inspector recommended that the buyer “may wish to have the pump further evaluated.”
However, neither the buyer nor her father, who knew Mr. Pratt, nor the home inspector contacted Pratt for additional information nor conducted further tests on the well.
In the case at bar, the seller did not state that the well was in good condition, only that the water source was adequate for normal household use.
Also, the seller had resided at the locus for approximately twenty-five (25) years, and that she had used the well for her normal household usage.
We conclude that the evidence supports the trial judge’s finding that the statement as to adequate water supply was an expression of opinion, not fact; that the plaintiff/ appellant did not sustain her burden of proof on the breach of contract nor fraudulent misrepresentation claims, and that the plaintiff/appellant did not prove that there was standard for adequacy of potable water for normal household use that the defendant/ appellee’s well did not meet.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed and the appeal of the plaintiff/appellant is dismissed.