MORRIS RUN COAL COMPANY, INC., Respondent, *v.* CARTHAGE SULPHITE PULP & PAPER CO., INC., Appellant, Impleaded with NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

Fourth Department, November 19, 1924.

**Sales — action for purchase price of coal screenings — plaintiff offered screenings of good quality — defendant accepted by telegraph — plaintiff then wrote adding other conditions — question of fact as to time when contract was completed — question of fact as to breach of warranty.**

In an action to recover the purchase price of coal screenings in which the defendant interposed the defense of breach of warranty of quality, a question of fact arose as to the time when the contract was completed and as to the breach of warranty, since it appears that the plaintiff wrote to the defendant offering it eight or ten carloads of screenings of good quality at a stipulated price; that the defendant accepted the offer by telegraph; and that thereafter the plaintiff wrote the defendant a letter in which it imposed several conditions not in the original offer, one of such conditions being that the coal was sold " as is."

A question of fact arose as to the time when the contract was made, for an inference might be drawn on the one hand that it was not complete until the formal acceptance was mailed, which, in this case, constituted a new offer, since it contained other conditions, and, therefore, the contract could not arise until a new acceptance was made, or, it might be inferred on the other hand, that the contract was complete before the letter imposing the new conditions was written.

The defendant was entitled to go to the jury on the question of breach of warranty, even though the screenings were bought " as is," since there was a representation that the screenings were of good quality and this, together with their sale for a known use, constituted a warranty that they were usable for the purposes for which they were sold.

Appeal by the defendant, Carthage Sulphite Pulp & Paper Co., Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Jefferson on the 29th day of March, 1923, upon the verdict of a jury rendered by direction of the court.

*Kilby, Norris & Smith* [*Fred L. Smith* of counsel], for the appellant.

*William L. Bowman,* for the respondent.

Clark, J.:

This is an appeal from a judgment in favor of plaintiff against the defendant Carthage Sulphite Pulp & Paper Co., Inc., entered on the verdict of a jury directed by the court. The complaint was dismissed at the trial as against the defendant New York Central Railroad Company.

The controversy arises over a contract for the purchase by defendant sulphite company and sale by plaintiff of ten carloads of anthracite coal screenings. The contract was entirely by correspondence.

The Morris Run Coal Mining Company, a Pennsylvania corporation, and this plaintiff, the Morris Run Coal Company, Inc., are closely allied and on the trial it was stipulated that correspondence between defendant and either of said companies would be considered the correspondence of the plaintiff.

On the 15th day of August, 1922, the Morris Run Coal Mining Company of Wilkesbarre, Penn., wrote defendant a letter concerning three cars of anthracite coal screenings it had previously ordered and then stated in the letter that it had located another pile of screenings of *good quality* which the owner would attempt to load if he could get an order for eight or ten cars and not contingent upon cancellation in case the coal strike was settled and stated that it had figured the cost at three dollars and eighty-five cents per gross ton f. o. b. cars, and added: " Please advise by wire whether you wish us to go further into the matter."

In reply to that letter defendant sent a telegram August 16, 1922, addressed to the Pennsylvania company at Wilkesbarre, Penn., as follows: " Your letter 15th. Enter order ten cars screenings as quoted." And on the same date defendant by letter confirmed the above telegraphic order.

**680** Morris Run C. Co., Inc., *v.* Carthage S. P. & P. Co., Inc.

Fourth Department, November, 1924.                    [Vol. 210

The next correspondence concerning this ten-car order was on the 19th day of August, 1922, when the Pennsylvania company which had received the telegraphic order from defendant for ten cars of screenings acknowledged receipt of the order by letter addressed to defendant and stated in the letter that trucks would begin loading the following Monday, and added: "Formal acknowledgments will be sent you from the Morris Run Coal Co., Inc., New York City."

It will be noticed that plaintiff did not state in this letter of August nineteenth that a formal contract would follow to be signed by the parties, but merely stated that "formal acknowledgments will be sent  *  *  *."

Plaintiff contends that the contract was not complete until it had formally accepted the order by its letter of August 19, 1922, in which it imposed several conditions not theretofore mentioned or considered by the parties. One of such conditions was as follows: "It is understood and agreed that you will accept 'as is' coal shipped upon the order above referred to."

Under the circumstances we are of the opinion that a question of fact was presented as to when the contract was made and what its terms were.

An inference might be drawn from the correspondence viewed in the light of the previous transaction between the parties that the contract was not complete until the formal acceptance was mailed, and that as the formal acceptance contained new terms, was in effect a new offer, and the contract was only complete upon acquiescence after the lapse of a reasonable time for the stating of objections.

On the other hand, it might be found as a fact from the evidence that the letter of August nineteenth from plaintiff's Wilkesbarre office was a complete even though formal acceptance of a previous definite offer, and that the contract was then an accomplished fact.

In view of the motions by both parties at the close of the evidence for judgment, and the stipulations by both parties that the case should be determined by the court as a matter of law, all questions of fact must be deemed found which are necessary to support the directed verdict. (*Thompson* v. *Simpson*, 128 N. Y. 270, 284.)

After the court stated his views on the main question, counsel for the defendant asked to go to the jury on the question of a breach of warranty. He was here clearly within his rights, for such a question was involved under the evidence. (*Howell* v. *Wright*, 122 N. Y. 667.)

Even though the screenings were bought "as is," still there was a representation that they were "good" screenings. They

were known to be purchased for use in the defendant's furnaces, and the representation that they were " good " together with their sale for a known use, was a warranty that they were usable for the purposes for which they were sold. (Pers. Prop. Law, §§ 95, 96, as added by Laws of 1911, chap. 571; *Hawkins* v. *Pemberton,* 51 N. Y. 198; *Prentice* v. *Fargo,* 53 App. Div. 608.)

The jury should have been allowed to pass on the question of the alleged breach of warranty.

We think under the facts there were two questions which should have been submitted to the jury: *First.* When was there a completed contract? *Second.* If it was completed upon the receipt by defendant of the letter Exhibit 6, written by plaintiff's Wilkesbarre office August 19, 1922, then was there a breach of warranty as to the quality of the screenings?

The judgment should be reversed on the law and a new trial granted, with costs to appellant to abide the event.

HUBBS, P. J., DAVIS, SEARS and TAYLOR, JJ., concur.

Judgment reversed on the law and new trial granted, with costs to appellant to abide event.