## Industrial Rayon Corporation v. Clifton Yarn Mills, Inc., Appellant.

Argued December 8, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Paul C. Hamlin* and *Harry S. Mesirov,* for appellant. —There was a contract for sale by sample complete without correspondence: Pittsburgh Sheet Mfg. Co. v. Mfg. Co., 197 Pa. 491; Long v. Coal Co., 292 Pa. 164.

The parol evidence rule does not exclude consideration of such tangible things as samples submitted and goods shipped prior to any written contract: Holt v. Pie, 120 Pa. 425; Selig v. Rehfuss, 195 Pa. 200; Schwab v. Ginkinger, 181 Pa. 8.

The burden of showing the agent's authority is not met by showing that plaintiff received from the agent a letter upon defendant's stationery replying to a letter addressed by plaintiff to the principal; no such rule is recognized in any Pennsylvania case: Long v. Coal Co., 292 Pa. 164; Kelly v. Trust Co., 299 Pa. 236.

Even if the sale was "as is," it was a sale by sample: Savage v. Motor Sales Co., 3 Pa. D. & C. 505.

*Frederick H. Spotts*, with him *James A. Montgomery, Jr.*, and *Pepper, Bodine, Stokes & Schoch*, for appellee. —Where a letter comes from one party on its official letterhead in response to prior correspondence, there is a presumption that the one sending and signing such letter has the requisite authority: Groves Piano Co. v. Adding Machine Co., 64 Pa. Superior Ct. 189.

Where an original and supplemental affidavit of defense are contradictory on a material matter of defense, they will be declared insufficient as a denial: Com. v. Snyder, 1 Pa. Superior Ct. 286; Penrose v. Caldwell, 29 Pa. Superior Ct. 550; Wood v. Kerkeslager, 227 Pa. 536.

If an article is sold "as is," its condition is immaterial, but it must answer the description given in the contract: Savage v. Motor Sales Co., 3 Pa. D. & C. 505.

OPINION BY MR. JUSTICE SIMPSON, January 16, 1933:
This is an action to recover the price of certain inferior rayon yarn, sold by plaintiff to defendant. The principal issue between the parties was whether the sale was *"as is and not returnable and without price guarantee,"* as plaintiff averred, or according to *"sample,"* as defendant asserted. The trial judge told the jury that plaintiff could not recover unless they found the contract

to be an "as is" contract. Their verdict for plaintiff, which was, as to this point, justified by the evidence, was, therefore, a finding that the sale was "as is and not returnable and without price guarantee;" and hence, unless defendant shows there was error in the admission or rejection of evidence, or some mistake in the manner of submitting that question to the jury, the judgment must be affirmed, since all other errors, if any, were harmless quoad the main point on which the verdict turned.

Viewed thus, the principal error alleged was that the trial judge submitted to the jury the determination of whether or not defendant was bound by a letter written on its behalf by one "B. Sherman." On this question, the record showed that after a consultation between plaintiff's Philadelphia representative and defendant's general manager, plaintiff sent to defendant, on request from the latter, five tubes weighing half a pound each of thirty filament inferior rayon yarn. Defendant, in turn, sent it to a prospective customer, and the latter agreed to take 50,000 lbs. of it, at 60 cents a pound. Defendant then sent to plaintiff, at its home office in Cleveland, Ohio, a purchase order for the 50,000 lbs. at 55 cents a pound, to which plaintiff, through its sales manager, wrote to defendant an acceptance of the order, directed to the "Attention of M. A. Price," defendant's general manager, saying therein: "It is further understood that this product is sold 'as is' and not returnable and without price guarantee." When the letter arrived at defendant's place of business, the general manager was absent, and the reply to it was signed "Clifton Yarn Mills, Inc., Rayon Plant, B. Sherman." It stated "The only change we wish to make in connection with your acknowledgment is that you omitted specifying *net weight.*" The next day plaintiff wrote, agreeing to that change, and thus the contract upon which plaintiff relied was made.

Defendant contends, however, that "B. Sherman," who signed the second of the above letters, had no authority

to act for defendant, and hence the contract relied on by plaintiff was not made, though the receipt of the 50,000 lbs. of inferior rayon yarn was admitted. This question was submitted to the jury, and their verdict in favor of plaintiff concludes this point also, if there was evidence justifying its submission. In addition to the fact that an answer, thus written and sent in the regular course of business, in reply to one sent to defendant, at its place of business, is presumed to have been written by authority of defendant, it further appeared that defendant's general manager, when testifying as a witness for it, in his cross-examination answered as follows: "Q. Well, what is he [Mr. Sherman] supposed to do with letters that come in your absence? [as was the case here]. A. In this case, Mr. Sherman knew that the yarn was sold [by defendant to its customer] and in order to speed up the delivery from the Industrial [plaintiff] he answered the letter as he thought was right. Q. And that was a perfectly proper thing for him to do? A. Yes." Moreover, in a later letter from defendant's sales manager it is said "I understood fully that the yarn was inferior and sold 'as is.' Inasmuch as there was no guarantee on the yarn we accepted it 'as is,' and based the quality of the yarn on the original eight or ten [actually five] tubes that you submitted for approval." This was the only point for which the letter signed by "B. Sherman" was important.

Worse still for the defendant, in its original affidavit of defense it expressly "admits writing and sending to plaintiff" that particular letter, and does not challenge Sherman's authority in regard to it. True, in the supplemental (not substitute) affidavit of defense, such authority is denied, but this in no way affects the admission, for evidential purposes, of Sherman's authority, as appearing in the original affidavit. See Heller v. Royal Ins. Co., 151 Pa. 101. In view of these facts, it would have been grave error to refuse to allow the jury to determine whether or not Sherman had authority to write and

send the letter; and it would have been surprising indeed if the jury had not decided that he had authority so to do.

With these questions resolved in plaintiff's favor, the assignments of error raise but one other point which needs consideration. Defendant, in one of its points for charge, asked the court to say that a sale "as is......refers simply to the condition of the goods and not to their quality," and hence does not affect the question as to whether or not the "as is" sale was also to be according to a sample which had been submitted. The trial judge decided otherwise; but told the jury that if, as defendant alleged, plaintiff, in order to induce defendant to make the contract in suit, alleged the "goods were a reject of the coneing department......and the defendant purchased the yarn relying on that statement, and the statement was untrue because the delivered yarn was not a reject from the coneing department, then, even though it was an 'as is' contract, the defendant would have had a right to reject the goods, because while I said that 'as is' means you take the goods as is, that is subject to the doctrine that if there is an actual description or statement made of a fact, the purchaser has the right to rely on that statement or description, and in that case ......the goods must be within the description." There is nothing in this of which defendant can justly complain, and the verdict in favor of plaintiff therefore determines that it made no false statement in regard to the yarn, and defendant's sole remaining contention must be that the court erred in deciding that if the yarn delivered was inferior rayon, "sold 'as is' and not returnable and without price guarantee," plaintiff had complied with its agreement.

Defendant correctly asserts in its brief: "The uncontradicted testimony is that there are only two standard grades of rayon yarn, first and second grade...... All rayon below these standard grades, down to waste, falls under the category of 'inferior rayon.'" Defendant also

admits that the yarn it was to get was to be inferior rayon, and that it did get inferior rayon, but alleges that it was not of as high a quality as the five tubes which were sent to it before the contract was made. Perhaps, therefore, this complaint of defendant might be considered as having been answered by defendant itself, when it says in the letter of April 3, 1931, written by the sales manager: "I understood fully that the yarn was inferior and sold 'as is.' Inasmuch as there was no guarantee on the yarn, we accepted it 'as is' and based the quality of the yarn on the eight or ten [actually five] tubes that you submitted for approval."

Defendant cites a number of cases which it alleges bear out its contention as to the meaning of the words "as is" in a contract of sale; but a consideration of them shows that none of them does. In Savage v. Z. S. Vertner Motor Sales Co., 3 Pa. D. & C. 505, it is simply decided that the language of a contract, which a vendor relies on to compel a vendee to accept a machine "absolutely incapable of performing its usual and customary functions," should "be clear and unequivocal and apply to the purchase in no uncertain terms." Here, the language of the contract falls within this requirement. In United States v. Atlanta Wrecking Co., 8 Fed. (2d) 542, it is held that where at an auction sale the article was sold "as is and where is," and not by sample—although samples were submitted—its purchaser is bound to take the article he purchased though "on inspection [it] proved to be practically worthless." This antagonizes defendant's contention. In W. H. Hedger Co., Inc., v. United States, 42 Fed. (2d) 553, it is said that where the identity of articles sold is fixed, the "as is, where is" of the bill of sale refers only to the condition of the article. The court there relied on Shepherd v. Kain, 5 Barn. & Ald. 240, where the sale of an article was "with all faults," and it was held that this means all faults consistently with its being the thing described. Substantially the same conclusion was reached in Whitney v.

Boardman, 118 Mass. 242, where it was held that "A sale of goods with 'all faults' covers, in the absence of fraud on the part of the vendor, all such faults and defects as are not inconsistent with the identity of the goods as the goods described." Fraud is not even averred in the instant case. In Schwartz v. Kohn, 155 N. Y. Supp. 547, "pussy willow taffeta was sold by *sample* 'as is,'" and it was held that "the seller cannot recover the purchase price where the goods delivered were not of the *kind* sold." Morris Run Coal Co. v. Carthage Sulphite Pulp & Paper Co., 206 N. Y. Supp. 676, was decided under the provisions of the Personal Property Law of New York; and in Stroock & Co. v. Lichtenthal, 229 N. Y. Supp. 371, the contract construed was not an "as is" contract.

It will be observed that none of those cases defeats the construction of the court below in the present case. The jury have resolved in plaintiff's favor all questions touching statements made in regard to the goods; it is admitted that the yarn sold and the yarn received was inferior rayon yarn, taken from the same general lot as that from which the five tubes were taken; and the only question was as to whether or not defendant had the right to return what was delivered, because it was not as good in quality, and hence not as valuable as that contained in the five tubes. This objection is unavailing to defendant, under the contract provision "that this product is sold 'as is' and not returnable and without price guarantee." Admittedly, the yarn delivered was thirty filament inferior rayon yarn, as the contract required it to be; and, this being so, the contract also said it was not to be returnable, and its price was not guaranteed. We regret defendant's loss, but this gives us no right, without plaintiff's consent, to do other than construe the contract which was made.

The judgment of the court below is affirmed.