J-A30029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BRETT SILVER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PORSCHE OF THE MAIN LINE AND ROBERT DISTANISLAO | |
| Appellee | No. 1057 EDA 2014 |

Appeal from the Order Entered February 27, 2014
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2013-01615

BEFORE:  LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY MUNDY, J.:                **FILED MARCH 10, 2015**

Appellant, Brett Silver, appeals from the February 27, 2014 order sustaining the preliminary objections filed by Appellees, Porsche of the Main Line (the Dealer) and Robert DiStanislao, to Silver's amended complaint. After careful review, we affirm.

We summarize the facts and procedural history of this case as follows. On October 8, 2012, Silver entered into a purchase order contract with the Dealer for a used 2009 Ferrari 599 GTB (Ferrari) for the purchase price of $232,630.56.  Appellant's First Amended Complaint, 4/30/13, at ¶¶ 6, 9. Silver and the Dealer had engaged in several prior sales transactions for

_____

[*] Retired Senior Judge assigned to the Superior Court.

other vehicles without incident. *Id.* at ¶ 26. At the time the parties entered into the purchase order contract, the Dealer did not have the Ferrari in its inventory or on its lot. *Id.* at ¶ 10. Instead, DiStanislao, the principal shareholder of the Dealer, located a number of comparable vehicles at Silver's request, and Silver selected the Ferrari from those vehicle listings. *Id.* at ¶¶ 27-31. Silver alleges that DiStanislao made various representations about the condition of this Ferrari, including, in part, that it had no prior history of damage or paintwork. *Id.* at ¶ 31.

There is no dispute that Silver and the Dealer entered into the purchase order contract on October 8, 2012. Preliminary Objections of Appellees to Appellant's First Amended Complaint, 5/20/13, at ¶ 1, Exhibit A; Appellant's Answer to Preliminary Objections of Appellees, 6/21/13, at ¶ 1. The contract indicates that Silver is purchasing a used 2009 Ferrari 599 GTB. Preliminary Objections of Appellees to Appellant's First Amended Complaint, at Exhibit A (Purchase Order Contract). Under the "Additional Equipment" section of the purchase order, it states "AS-IS NO WARRANTY." *Id.* Further, the purchase order contains a separate box labeled "WARRANTY INFORMATION" that is set off from the rest of the contract with the following "AS IS" provision, "AS IS – This motor vehicle is sold 'AS IS' *without any warranty* either expressed or implied. The purchaser will bear the *entire expense* of repairing or correcting any defect that presently exists or that may occur in the vehicle." *Id.* (emphasis in original). Directly below

that provision in the warranty information box is a signature line, which Silver signed separately. ***Id.*** Moreover, the purchase order contains an integration clause specifying, in relevant part, as follows.

> Purchaser agrees that this order includes all of the terms and conditions on both the face and reverse side hereof, that this order cancels and supercedes any prior agreement and as of the date hereof comprises the complete and exclusive statement of the terms of agreement relating to the subject matters covered hereby.

***Id.*** Silver and the Dealer's representative endorsed the contract on the signature line directly below the foregoing clause. ***Id.***

Thereafter, the Dealer purchased the vehicle from a third-party dealer, who then delivered it to the Dealer. Appellant's First Amended Complaint, 4/30/13, at ¶¶ 31-32. The Dealer inspected the Ferrari, and Silver accepted delivery and took possession of the vehicle on October 20, 2012. ***Id.*** at ¶ 35-36, 40. On the same day, Silver drove the Ferrari to a third-party Ferrari dealer, Algar Ferrari (Algar). ***Id.*** at ¶ 41. Silver visited Algar to inspect a different vehicle he had ordered that was being prepared for shipment to his vacation home in Florida. ***Id.*** While at Algar, an Algar representative noticed that several locations of Silver's Ferrari exhibited signs of damage to the clear coat[1] as well as evidence of repainting. ***Id.*** at ¶¶ 42-45. Silver

---

[1] The clear coat is a glossy, transparent coating applied over the basecoat to protect it from abrasion and ultraviolet light.

claims this cosmetic damage significantly impairs the value of the Ferrari. *Id.* at ¶¶ 23-25. After discovering the damage, Silver contacted the Dealer and DiStanislao, who inspected the Ferrari and offered to accept it back in exchange for full market value as long as Silver used the credit to purchase another vehicle from DiStanislao. *Id.* at ¶ 52. Silver rejected this proposal and instituted the instant action. *Id.* at ¶ 53.

On March 6, 2013, Silver filed his complaint. Thereafter, on April 30, 2013, Silver filed his amended complaint in response to Appellees' initial preliminary objections. In count one of his amended complaint, Silver claims Appellees made fraudulent representations by failing to provide a true description of the condition of the vehicle, upon which representations Silver reasonably relied in deciding to purchase the vehicle. *Id.* at ¶¶ 61-81. In count two of his amended complaint, Silver avers Appellees violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1 to 201-9.3, by misrepresenting the condition of the vehicle. *Id.* at ¶¶ 82-100. In count three, Silver alleges Appellees contravened the federal Magnuson-Moss Warranty Improvement Act, 15 U.S.C. §§ 2301-2312, by not honoring express warranties as well as those implied by Pennsylvania law. *Id.* at ¶¶ 101-112. In count four, Silver asserts Appellees violated the Pennsylvania Uniform Commercial Code (UCC) by delivering a vehicle that did not conform to the material terms of the sale. *Id.* at ¶¶ 113-122. In count five, Silver contends Appellees

negligently misrepresented the history and condition of the vehicle. *Id.* at ¶¶ 123-136.

Thereafter, on May 20, 2013, Appellees filed preliminary objections to the amended complaint in the nature of demurrers and a motion to strike. Appellees first argued that DiStanislao could not be held personally liable for his conduct that was within the scope of his employment, agency, and authority as the primary shareholder of the Dealer. Appellees' Preliminary Objections to Appellant's First Amended Complaint, 5/20/13 at 8-9. Next, Appellees contended that the combination of the "as is" warranty and the integration clause in the purchase order rendered Silver's claims legally insufficient as any oral representations would be impermissible parol evidence. *Id.* at 10-23. Further, Appellees claimed that the tort claims based on fraudulent conduct in counts one, two, and five were barred by the "economic loss doctrine," which prevents plaintiffs from recovering in tort for claims that arise solely out of a breach of contract. *Id.* at 23-27. Finally, Appellees moved to strike the demands for punitive damages because Appellees' alleged conduct would not support the imposition of said damages. *Id.* at 27.

In its February 27, 2014 order,[2] the trial court sustained Appellees' preliminary objections. On March 26, 2014, Silver filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On May 28, 2014, the trial court filed its opinion pursuant to Rule 1925(a). In its opinion, the trial court explained that it sustained the demurrers to holding DiStanislao individually liable and to all of the counts against the Dealer based on the "as is" warranty combined with the integration clause.[3] Trial Court Opinion, 5/28/14, at 1-2.

On appeal, Silver raises the following issues for our review.

> Is Appellant entitled to a reversal of the trial court's ruling when, applying Pennsylvania law, the trial court abused its discretion and/or misapplied the law by:
>
>> a. Sustaining Appellees' preliminary objections on the basis that Appellant's [f]raudulent [m]isrepresentation, Magnuson-Moss Warranty Act, [n]egligent [m]isrepresentation and UCC claims are barred, although such claims are permissible

---

[2] The order was dated February 26, 2014, and it was entered on the docket on February 27, 2014.

[3] We note that while the trial court's February 27, 2014 order did not expressly dismiss the amended complaint, "an order granting preliminary objections in the nature of a demurrer is a final order and is, therefore, appealable to this Court immediately." *D'Elia v. Folino*, 933 A.2d 117, 121 (Pa. Super. 2007) (citations omitted), *appeal denied*, 948 A.2d 804 (Pa. 2008). Accordingly, we have jurisdiction over this appeal.

due to deficiencies in the "AS IS" disclaimer; and

b. Sustaining the preliminary objection regarding claims asserted against Appellee DiStanislao, in his individual capacity, although such claims raised a genuine issue of material fact.

Silver's Brief at 5.

Silver's claims challenge the trial court's decision to sustain Appellees' preliminary objections in the nature of a demurrer. When reviewing said order, we are guided by the following.

Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Lenau v. Co-eXprise, Inc.*, 102 A.3d 423, 428-429 (Pa. Super. 2014), *quoting* *Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011).

Here, the trial court concluded that the fully integrated, written purchase order contract containing an "as is" clause would bar the introduction of parol evidence of pre-contract representations made by the Dealer and would preclude finding that Silver's reliance on any of those representations was justifiable. Trial Court Opinion, 5/28/14, at 6-16. We agree.

In the first issue presented for our review, Silver contends that the "as is" clause in the purchase order contract is deficient and does not preclude his causes of action based on pre-contract oral representations of the Ferrari's condition and his justifiable reliance thereon. Silver's Brief at 5. We begin by noting that our Supreme Court has explained the parol evidence rule as follows.

> [W]here "'the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement[;]'" that "[a]ll preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract[;]'" and that "'unless fraud, accident, or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.'"

*Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 204 (Pa. 2007), *quoting*

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).

"Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written

negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." ***Youndt v. First Nat. Bank of Port Allegany***, 868 A.2d 539, 546 (Pa. Super. 2005), *quoting* ***Yocca***, ***supra***. Initially, to determine whether the parol evidence rule applies, we must decide whether the written contract is the parties' entire contract. ***Id.*** "An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." ***Yocca***, ***supra***.

Our Supreme Court has recognized exceptions to the parol evidence rule, such as when a party alleges that the contract is ambiguous. ***Toy***, ***supra***. Further, parol evidence is admissible to prove averments that a term was omitted from the writing due to fraud, accident, or mistake, *i.e.*, a claim for fraud in the execution of the contract. ***Id.*** Parol evidence may not, however, be admitted to show one party made a false representation that persuaded the other party to enter the contract, *i.e.*, a claim for fraud in the inducement. ***Id.***

Herein, there is no dispute that both parties executed the purchase order contract. It contained all of the essential terms for the purchase of the Ferrari, including the parties, the condition of the vehicle, and the total price, including a deduction for the value of two cars Silver was trading-in towards

the purchase price. **See** Appellees' Preliminary Objections to Appellant's First Amended Complaint, 5/20/13, at Exhibit A (Purchase Order Contract). It also contained an integration clause stating that the contract was the parties' entire agreement that both "cancels and supercedes" any prior agreements and "comprises the complete and exclusive statement of the terms of agreement relating to the subject matters covered hereby." **Id.**

It is also unambiguous regarding the used, "as is" condition of the Ferrari. The box denoting its condition as "used" is marked with "XX". **Id.** The words "AS-IS NO WARRANTY" are typed into the "additional equipment" section of the contract. **Id.** Further, in a separate box labeled "Warranty Information," the checked off "AS IS" clause states "[t]his motor vehicle is sold 'AS IS' *without any warranty* either expressed or implied. The purchaser will bear the *entire expense* of repairing or correcting any defect that presently exists or that may occur in the vehicle." **Id.** (emphasis in original). Directly below that, in the "Warranty Information" box, there is a signature line, which Silver signed. **Id.**

It is clear that the words "as is" disclaim any implied warranties. The Pennsylvania Commercial Code provides that "[u]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the attention of the buyer to the exclusion of warranties and makes plain that there is no implied warranty." 13 Pa.C.S.A. § 2316(c)(1); **see**

*also PBS Coals, Inc. v. Burnham Coal Co.*, 558 A.2d 562, 564 (Pa. Super. 1989) ("when something is accepted 'as is' the buyer is put on notice that there may be liabilities attendant to the purchase. The warranties which may otherwise be implied by law do not attach when the buyer agrees to accept the goods in the condition in which they are found[]"), *appeal denied*, 568 A.2d 1248 (Pa. 1989).  Therefore, because the purchase order contract represented the entire agreement of the parties, parol evidence cannot be used to explain or vary the "as is" clause.  *See Youndt*, *supra*.

Silver proffers multiple reasons that the trial court erred in applying the "as is" clause to dismiss his claims.  Silver's Brief at 11-25.  Initially, Silver claims Pennsylvania case law permits a cause of action for misrepresentation of an item's condition even though a contract contains an "as is" clause.  *Id.* at 12, *citing* *Indus. Rayon Corp. v. Clifton Yarn Mills, Inc.*, 165 A. 385, 387 (Pa. 1933); *Morningstar v. Hallett*, 858 A.2d 125, 131 (Pa. Super. 2004).

We conclude, however, that these cases support the dismissal of Silver's claims.  Both cases provide that an "as is" clause cannot disclaim an express warranty, so that if an express warranty is breached, the seller may be liable, but, on the other hand, if the representation that the buyer complains about is not a breach of the express warranty, then the "as is" clause may shield the seller from liability.  For example, in *Industrial Rayon*, the parties entered into an "as is" contract for inferior rayon yarn

that the contract represented had been rejected by the coning department.[4]
**Indus. Rayon**, **supra** at 385. The purchaser later sued the seller, claiming that the yarn it received was not the same quality as five samples the seller provided that induced the buyer to enter into the "as is" contract. **Id.** Our Supreme Court affirmed the trial court's jury instruction that the jury could find the seller liable if, among other things, the yarn was not actually a reject from the coning department as expressly represented in the contract. **Id.** at 386. However, the Court concluded that the product delivered was inferior rayon yarn rejected by the coning department, as represented in the contract, so the "as is" clause prevented the purchaser from suing based on its quality. **Id.** at 387.

Likewise, in **Morningstar**, the parties entered into a contract for the purchase of a horse, and the contract warranted that the horse was, among other things, 11 years old. **Morningstar**, **supra** at 127. The contract also contained "as is" language. **Id.** The seller brought a breach of contract action seeking payment for the horse, and the purchaser counterclaimed for fraud, misrepresentation, unfair trade practices, and mutual mistake, based

---

[4] In industrial textile manufacturing plants, machines in the "coning department" spooled finished yarn onto cone-shaped holders. The cone configuration allows the yarn to unwind freely and evenly, particularly in machine weaving. Coning also enabled the yarn to be spooled and sold in large quantities. The coning department contained inspectors who examined the finished cones in preparation for shipment.

on the purchaser's contention that the horse was 16, not 11, years old. *Id.* at 128. The trial court granted summary judgment to the seller based on the "as is" clause and dismissed the purchaser's counterclaims. *Id.* This Court reversed because the terms of the contract created an express warranty that the horse delivered would be 11 years old, and the "as is" clause could not disclaim that express warranty. *Id.* at 131. Thus, there was a disputed issue of material fact regarding whether the horse delivered was actually 11 years old. *Id.* This Court also permitted the purchaser to proceed on her claims of fraud, misrepresentation, unfair trade practices, and mistake based solely on the jury instruction in *Industrial Rayon*.

> [I]n *Industrial Rayon Corp.*, *supra*, our Supreme Court approved a trial judge's charge wherein he advised the jury that it could render a verdict for the buyer despite an "as is" clause if they found that the seller had misrepresented the origin of the goods and that the buyer had relied on this misrepresentation. Thus, the "as is" language contained in the sales agreement does not necessarily preclude an action by Hallett for fraud, misrepresentation, deceptive trade practices, or mistake. Accordingly, we conclude that the trial court erred in precluding Hallett from proceeding on her claims solely on the basis of the "as is" clause.

*Id.*

In this case, *Industrial Rayon* and *Morningstar* support the trial court's conclusion that Silver's claims against the Dealer are legally insufficient. Unlike the contracts in *Industrial Rayon* and *Morningstar*, which contained terms creating express warranties, the written contract between the Dealer and Silver simply provided that the vehicle was "used,"

and did not contain any further express warranties about the condition of the vehicle's paint. Therefore, the "as is" clause applies and sets forth that "[t]he purchaser will bear the entire expense of repairing or correcting any defect that presently exists or that may occur in the vehicle." ***See*** Appellees' Preliminary Objections to Appellant's First Amended Complaint, 5/20/13, at Exhibit A (Purchase Order Contract).

Next, Silver claims that Section 2316(c)(2) of the Uniform Commercial Code (UCC), 13 Pa.C.S.A. §§ 1101-9809, provides that an "as is" provision is not effective unless the buyer inspects the goods, or has an opportunity to do so, before entering into the contract. Silver's Brief at 13. Section 2316 of the UCC, in relevant part, provides as follows.

### § 2316. Exclusion or modification of warranties

…

**(b) Implied warranties of merchantability and fitness.**--Subject to subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

**(c) Implied warranties in general.**-- Notwithstanding subsection (b):

(1) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or

> other language which in common understanding calls the attention of the buyer to the exclusion of warranties and makes plain that there is no implied warranty.
>
> (2) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him.
>
> (3) An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

13 Pa.C.S.A. § 2316(b)-(c). A plain reading of Section 2316 reveals that subsection (c) contains three separate "common factual situations in which the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that a certain implied warranty is being excluded." *Id.* at cmt. 6. Subsection (c)(1) provides that "as is" language itself is sufficient to disclaim all implied warranties, regardless of whether the buyer has the opportunity to inspect the goods. *Id.* § 2316(c)(1). Contrary to Silver's argument, subsection (c) does not make an "as is" clause contingent on a purchaser's inspection of the goods, therefore, Silver's reliance on Section 2316 is misplaced.

Similarly, Silver relies on Section 2602 of the UCC to argue that he retained the right to reject the vehicle after delivery because he did not have the opportunity to inspect it before entering into the contract. Silver's Brief

at 17-20. Again, Silver's reading of the UCC is incorrect. In order for the right to rejection to arise, Section 2601 provides that "the goods or the tender of delivery [must] fail in any respect to conform to the contract." ***Id.*** § 2601. As noted above, the Ferrari as presented to Silver conformed to the description in the purchase order contract of a used, "as is" Ferrari. Therefore, Silver's contention that he had a right to reject delivery of the vehicle fails.

Finally, Silver contends that the "as is" clause is deficient because the Dealer did not comply with Section 301.4(a)(9) of Pennsylvania's Automotive Industry Trade Practices Regulations (AITP Regulations), 37 Pa. Code §§ 301.1-301.6. Silver's Brief at 13-15. Specifically, Silver alleges he did not see the vehicle prior to purchasing it, so he did not see the window statement required by Section 301.4(a)(9). ***Id.*** at 14. Silver also claims that Section 301.4(a)(9) provides that an "as is" disclaimer cannot contradict prior oral statements and representations about the vehicle made by the Dealer and DiStanislao. ***Id.*** at 15. Section 301.4(a)(9) provides as follows.

> **§ 301.4. General provisions--motor vehicle dealer.**
>
> (a) With regard to a motor vehicle dealer, the following will be considered unfair methods of competition and unfair or deceptive acts or practices:
>
> …

(9) Where no express warranty is given, attempting to exclude the implied warranties of merchantability and fitness for a particular purpose in the sale of a motor vehicle purchased primarily for personal, family or household purposes unless the following notice in at least 20-point bold type is prominently affixed to a window in the motor vehicle so as to be easily read from the outside and is brought to the attention of the prospective purchaser by the seller:

> This vehicle is sold *without any warranty*. The purchaser will bear the *entire expense* of repairing or correcting any defects that presently exist and/or may occur in the motor vehicle unless the salesperson promises *in writing* to correct such defect or promises in *writing* that certain defects do not exist.

This paragraph prohibits the use of the term "AS IS" unless the sales contract, receipt, agreement or memorandum contains the following information in a clear, concise and conspicuous manner on the face of the document; the notice shall be in addition to the window statement required by this paragraph and may not contradict an oral or written statement, claim or representation made directly or by implication with regard to the quality, performance, reliability or lack of mechanical defects of a motor vehicle which is offered for sale:

**AS IS**

**THIS MOTOR VEHICLE IS SOLD AS IS WITHOUT ANY WARRANTY EITHER EXPRESSED OR IMPLIED. THE PURCHASER WILL BEAR THE ENTIRE EXPENSE OF REPAIRING OR CORRECTING ANY DEFECTS THAT**

**PRESENTLY EXIST OR THAT MAY
OCCUR IN THE VEHICLE.**

37 Pa. Code § 301.4(a)(9) (emphasis and capitalization in original).

Contrary to Silver's averment, noncompliance with Section 301.4(a)(9) does not render a contract provision "insufficient" or "deficient." Silver's Brief at 14-15. Instead, noncompliance with Section 301.4(a)(9) is a potential basis for liability under the UTPCPL. However, Silver's amended complaint does not plead his UTPCPL claim based on a violation of Section 301.4(a)(9), despite pleading other violations of the AITP Regulations. *See* Appellant's First Amended Complaint, 4/30/13, at ¶¶ 93-94 (pleading violations of Section 301.2(4), (5), (6), (19), and 301.4(a)(6)(iv)). Nor did he raise non-compliance with Section 301.4(a)(9) as a basis for UTPCPL liability in his response to the preliminary objections. *See* Appellant's Answer to Preliminary Objections of Appellees, 6/21/13. Accordingly, Silver has waived this argument. *See* Pa.R.A.P. 302 ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal[]"). Therefore, Silver's claim that the "as is" clause is deficient under Section 301.4(a)(9) fails.

Based on the foregoing, we conclude that the trial court properly sustained Appellees' preliminary objections. It is clear and free from doubt that Silver will be unable to prove facts legally sufficient to establish the

right to relief on any of his claims against either the Dealer or DiStanislao.[5]

**See Lenau**, **supra**.  Accordingly, the February 27, 2014 order is affirmed.[6]

Order affirmed.

_____

[5] In particular, because parol evidence is not admissible to show that any prior misrepresentation by the Dealer induced Silver into the contract of sale, count one for fraudulent misrepresentation and count five for negligent misrepresentation, which are both claims of fraud in the inducement, fail. **See Toy**, **supra**.  Count two for violation of the UTPCPL and the UCC claim in count four also fail because an element of each is justifiable reliance, but the "as is" clause effectively disclaimed any implied warranties and eliminated any justifiable reliance on the pre-contract representations of the Dealer or DiStanislao.  Silver cannot **justifiably** rely on representations made by the Dealer or DiStanislao before the parties entered into the purchase order contract.  By signing the contract, which contained an integration clause stating that its terms superseded all of the previous representations and agreements, Silver disclaimed reliance on any such representations.  **See Yocca**, **supra** at 502.  Finally, the trial court properly dismissed count three claiming the Dealer and DiStanislao violated the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, because the "as is" clause effectively disclaimed any implied warranties under Pennsylvania law.  **See** 13 Pa.C.S.A. § 2316(c)(1).

[6] Because we have determined that all of Silver's claims are legally insufficient as to the Dealer and DiStanislao, we do not need to address Silver's second claim on appeal that DiStanislao can be held individually liable by piercing the corporate veil.  Similarly, we need not address Appellees' claims that the "economic loss doctrine" bars certain causes of action pled by Silver.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/10/2015